## GIST, adm'r, vs. GANS.

1. CONSIDERATION: *Confederate money.*
   Suit on a note, plea that it was executed for Confederate money, and was therefore illegal and void; held that the plea was demurable.
2. EVIDENCE: *Competency when one of the parties is dead.*
   Under a plea of *non est factum* by an administrator to a declaration on a note alleged to have been executed by his testator, the plaintiff should not be permitted to testify that the deceased executed the note just as it was at the time of testifying; the evidence relates to a transaction between the parties, and is within the constitutional inhibition.
3. ———. *Same.*
   *Semble.* Where it is competent for a party to testify to the existence or non-existence of a fact he may be permitted to do so, though his testimony may inferentially affect a fact or transaction as to which he is incompetent to testify.

Gist, adm'r, vs. Gans.

·4. NON EST FACTUM: *Burden of proof under plea of.*
Under the special plea of *non est factum* the burden of proof is on the defendant.

·5. ALTERATION: *Not evidence of fraud, etc.*
An apparent alteration on the face of an instrument creates no legal presumption that it was fraudulently altered; and under the issue of *non est factum* the question must be determined from the appearance of the instrument in consideration with the evidence introduced.

·6. PROPERTY NOTE: *Demand before suit, when it ceases to be necessary.*
A promise to pay a given sum in cotton, at a fixed rate per pound to be delivered at a designated place when called on ·by the payee, is a property note, and demand is necessary before suit; but upon the death of the maker, demand ceases to be necessary, as the administrator could not, according to the due course of administration, comply with it; and it will be sufficient to probate and present the claim as in case of other demands.

APPEAL from *White* Circuit Court.

Hon. M. L. RICE, Special Judge.

*Turner & Moore*, for appellant.

The court erred in sustaining demurrer to the plea of illegality ·on account of Confederate money. *Latham* v. *Clark*, 25 Ark., ·574; *Jordan* v. *Walker*, 26 id., 1; *King* v. *Carnall*, ib., 36; *Carl Lee* v. *Carlton*, 27 ib., 379. It was good at least to reduce the amount of recovery under act of March 5th, '67, which it is argued was not obnoxious to the objection made in *Leach* v. *Smith*, 25 Ark., 248. See also *Thorington* v. *Smith*, 8 Wall., 1 and 19 ib., 548.

And in admitting the testimony of plaintiff, the proof as to the apparent alteration was part of the *res gestœ* between plaintiff and intestate. *Strong* v. *Devin*, 55 Barb., 342; *Stanley* v. *Whitney*, 47 id., 586, and in refusing to make the declarations of law asked by defendant *Wilde* v. *Ormsby*, 6 Cush., 314; note to p. 322, 2nd Pars. 5th Ed.; *Jackson* v. *Osboon*, 2 Wend., 555; *Ely* v. *Ely*, ·6 Gray (Mass.,) 441; *Wheat* v. *Arnold*, 36 Ga., 482; *Hill* v. *Cooly*, 46 Penn., 261; *Chism et al.* v. *Toomer* 27 Ark., 108;

Gist, adm'r, vs. Gans.

*Burnham* v. *Ayer*, 35 N. H., 354; *Sheldon* v. *Hawes*, 15 Mich., 522; *Porter adm'r*, v. *Doby*, 2 Rice Eq., (S. C.) 49; *Dow* v. *Jewell*, 18 N. H., 356.

This was not a money contract, and might be paid in property. 2 Par. on Con, (5th Ed.,) p. 651. See *Bradley* v. *Farrington*, 4 Ark., 532; *Jeffrey* v. *Underwood*, 1 Ark., 119; *Hudspeth* v. *Gray*, 5 Id., 158; *Gregory* v. *Bewley et al.*, 5 ib., 318.

Demand was necessary. *Rice* v. *Churchill*, 2 Denis, 145; *Lobdell* v. *Hopkins*, 5 Cowan, 516; *Vance* v. *Bloomer* 20 Wendall, 196; *McMurry* v. *State*, 6 Ala., 325; *Dundridge* v. *Harris*, 1 Wash. (Va.,) 326 Mury; 2 Parsons on Con., 649, 657 and notes; 1 ib., 539 and notes.

*Coody*, for appellee.

All other matters in this case are abandoned by appellant's notice for a new trial, save the rulings of the court on special plea of *non est factum* 19 Ark., 122 and 683; 20 Ark., 36; 23 Ark., 19. See *Fowler* v. *Bender*, 18 Ark., 262. The burden of proof is on the pleader. *Reed* v. *Latham*, 1 Ark., 66; *Rogers* v. *Diamond*, 13 Ark., 480; 4 Met., 221; 17 Pick., 418; 7 Ind., 129; 3 Sneed, 342; 10 Conn., 182; 6 Cow, 192; 8 ib., 71; 3 Vt., 521-22; Burk Ch. 119; 6 Ala., 707.

No presumption is raised by an apparent alteration. It is a question of fact. 10 Am. Rep., 232; citing *Hunt* v. *Gray*, 35 N. Y., 227; 2 Par. on Cons., 721; *Davis* v. *Finney*, 1 Met., 221-2; *Gooch* v. *Bryant*, 13 Me., 386; 20 Vt., 205; 1 Halst., 215; 5 Harris & J., 36; *Clarke* v. *Rogers*, 2 Greenl., 147. It must be material. 2 Parsons on Cons., 718; 5 Mass., 540; 6 ib., 519; 3 Ohio St., 445; 9 Ark. 122. The note was for a sum certain, and no demand was necessary. *Hoys* v. *Tuttle*, 8 Ark., 124; *Williams* v. *Green*, 14 Ark., 325.

On admission of plaintiff's testimony, see *Giles, adm'r*, v. *Wright*, 26 Ark., 476.

The finding of the court, sitting as a jury, will not be disturbed on weight of evidence. *Jackson* v. *Rutherford*, 23 Ark., 24.

ENGLISH, CH. J.:

On the 12th day of August, 1867, Leon Gans, after notice to James M. Gist, administrator, presented to the Probate Court of White county, for allowance and classification, the following claim against the estate of John F. Thomas, deceased, properly authenticated by affidavit:

" STONY POINT, April 25th, 1862.

$895.25.   Due Leon Gans eight hundred and ninety-five 25-100 dollars borrowed money, and payment for a mule, for which I promise to deliver cotton at Des Arc at eight cents per pound when called for.          JNO. F. THOMAS."

Gist, the administrator, interposed two pleas: *First*—A special plea of *non est factum*. *Second*—That the note sued on was a Confederate money contract, and illegal and void. Demurrers were interposed to both pleas, sustained as to the second and overruled as to the first, and the plaintiff declining to answer over to the first plea, judgment was finally rendered, after protracted proceedings not material to be stated, in favor of defendant, and plaintiff appealed to the Circuit Court.

The Circuit Court reversed the judgment of the Probate Court for errors appearing of record, and opened the case for trial *de novo*. A demurrer to the second plea was sustained, defendant was permitted to amend the first plea. The cause was tried by the court sitting as a jury on the first plea, finding and judgment in favor of plaintiff, motion for a new trial was overruled, bill of exceptions and appeal by defendant.

*First*—The second plea, as amended in the Probate Court, and to which a demurrer was there sustained, as well as in the Circuit Court, is, in substance, as follows:

" And for a second and further plea in this behalf, said defendant says *actionem non*, because he says that as to the sum of —— dollars, the loaned money mentioned in said note, the same was the amount of a certain currency commonly called Confederate money, which was pretended treasury notes, issued and circulated by the late so-called government of the Confederate States, as a currency to aid, assist and support said so-called Confederate States in the prosecution of the late war of resistance and rebellion against the authority of the government of the United States, and to dissolve the Union of the States of the said United States, contrary to the peace and public policy of said United States and the people thereof, which Confederate money was then loaned by said plaintiff to said deceased in his lifetime, as money and currency to be by him paid out and circulated as currency, contrary to the public policy and the peace and interest of the people of the United States, and the mule mentioned in said promissory note was estimated and sold to said deceased by said plaintiff at its estimated value in the same pretended currency, to-wit—Confederate money, and that said note was to be paid off and discharged in cotton at its estimated value in Confederate money, and was dischargeable in Confederate money if not paid off and discharged in cotton, according to the original stipulation thereof. And so defendant says that said contract was against the public policy of the government and people of the United States, to the great detriment of the interest and peace of said government and people, and is void, without this that said note was executed for or upon any other consideration whatever than as aforesaid ; and this defendant is ready to verify. Whereupon," etc.

The causes assigned for demurrer are numerous and need not be stated.

*Vol. xxx.—19.*

The plea attempts to answer and defeat the whole cause of action, on the ground that the note was a Confederate money contract, illegal and void.

The logic of the plea is that Confederate money was illegally issued, and therefore a contract between individuals in an ordinary private transaction, based upon such money is tainted with the illegality and void.

The substance of the plea is that plaintiff loaned defendant's intestate Confederate money, the amount not stated; that intestate owed plaintiff for a mule, value in like money, for which sums the note was given payable in cotton, and to be discharged in Confederate money if the cotton was not delivered, and therefore the whole note was alleged to be illegal and void.

In *Latham* v. *Clark*, 25 Ark., 574, a majority of the judges of this court (sitting under the constitution of 1868) decided that contracts based upon Confederate money between individuals in the ordinary course of their private transactions, were illegal and void. Mr. Justice Harrison dissenting, thought proper to follow the more reasonable views of the Supreme Court of the United States, as expressed by the Chief Justice in *Thorington* v. *Smith*, 8 Wallace, 1, and to which views the same court has adhered in a number of later decisions, as shown by us in the case of *Berry, adx. et al.* v. *Bellows, adm'r, ante.*

Had the plea sought to scale the contract to a Confederate money value (as in *Roane* v. *Green and Wilson*, 24 Ark., 210), we might examine the act of March 5th, 1867 (Acts of 1866, p. 195) to inquire whether it was unconstitutional as impairing the obligation of contracts, as held in *Leach* v. *Smith*, 25 Ark., 246, and *Green & Wilson* v. *Roane*, 24 Ark., 15, or whether it merely attempted to change a rule of evidence, and permit parties to prove, by parol evidence, the character of written contracts made when Confederate money was circulating as a currency. But such was not the object of the plea, its substance

and purpose being to defeat the whole cause of action, on the ground that the contract was illegal and void. The court below properly sustained a demurrer to the plea.

*Second*—The special plea of *non est factum* as amended, and on which the cause was tried in the Circuit Court, is as follows:

"Defendant says, upon information and belief, that the words 'when called on,' appearing on the instrument sued on, were not on or a part of said instrument when it was executed by said John F. Thomas, but have been (as he believes) fraudulently added thereto by said plaintiff, or by his procurement, since it was executed, and without the knowledge or consent of said deceased in his lifetime, or of the defendant since his death."

A demurrer was interposed to this plea, and overruled, and the cause submitted to the court sitting as a jury, and the court found for the plaintiff and gave judgment $1,170.50, being, as stated in the entry, the principal and interest on the instrument sued on from time payment was demanded.

It appears from the bill of exceptions taken by the defendant that on the trial, the plaintiff read in evidence the note sued on, and copied above. Also the notice served by plaintiff on the defendant, 20th July, 1867, that application would be made to the Probate Court for the allowance and classification of the claim, etc.

Plaintiff was then permitted to read in evidence, against objection of defendant, the following portion of a deposition of plaintiff taken at Philadelphia, Pa., on the 13th day of February, 1871:

"I reside in the city of Philadelphia, and am the plaintiff in this suit. I knew John F. Thomas in his lifetime; he executed the note sued on, just as it is; it has not been altered in the least."

To the reading of this deposition defendant objected, when offered, as inadmissible, being testimony of a transaction between plaintiff and intestate in his lifetime, and deponant not being called on by defendant, or required by the court to testify, but the court overruled the objection.

Defendant then exhibited to the inspection of the court the instrument sued on.

J. W. Bradley, witness for defendant, testified that he was an old merchant of many years' experience in observing the hand-writing of others, and, upon inspection of the instrument sued on, which was exhibited to him, was of the opinion, from the appearance of the instrument, that the words *"when called on,"* in it, were in different ink, and written by a different pen from the body of the instrument, or the signature thereto; that the handwriting of said words was not the same as the signature, and he thought appeared to be different from the balance of the body of the instrument, but of this he was not certain.

On cross examination, he stated that when a party would be at his desk, when there should be different inks and pens, he might, upon discovering that an instrument he had written was incomplete, pick up a different pen and use different ink in completing it, all at the time of the transaction, and before the signing of the instrument; witness had done such a thing himself.

It was admitted at the bar, by plaintiff's attorney, that the body of the instrument was in the handwriting of plaintiff.

This was all the evidence.

The defendant asked the court to declare the law as follows:

*First*—If the instrument sued on appears to have been altered, the burden of proof, on the special plea of *non est factum*, is shifted to the plaintiff, and it is incumbent on him to explain this appearance.

*Second*—If the words *"when called on,"* in said instrument, appear to have been written with a different pen and different ink from the rest of the body of the instrument, and from the signature thereto, this is sufficient evidence to require the plaintiff to remove, by proof, the suspicion thereby attached to the instrument.

*Third*—If the words *"when called on"* have been fraudulently added to the instrument by the plaintiff, or by his procurement, since it was executed, this avoids it, and entitles the defendant to judgment against him.

*Fourth*—The instrument sued on is a property note, or contract for the payment or delivery of cotton, and no right of action could accrue on it to plaintiff until the cotton was demanded of the intestate or his administrator.

*Fifth*—The law and evidence in the case are for the defendant.

The court gave the *first* and third of the above declarations, but refused the *second, fourth* and fifth.

And of its own motion made the following declaration:

In lieu of the *fourth* declaration asked by the defendant, the court declares that the note sued on is a note for the payment of money with a privilege to the obligor to pay and discharge the same in cotton, at eight cents per pound.

The court found the facts in the case as follows:

*First*—From an inspection of the instruments sued on, I am of opinion that the words "when called on" were not written with the same pen or same ink with which the body and signature were written, and that they were not written by the person who wrote the signature.

*Second*—I find from the evidence that the instrument was not altered or changed by the plaintiff, or by his procurement, after the same was executed and delivered.

*Third*—I further find that said instrument was not altered or changed by any person after the same was executed and delivered.

*Fourth*—In deciding the case, I take judicial notice of the general condition of the country, and the insecurity of property, especially of cotton, at the time of the execution of the note, and for several months afterward.

The grounds of the motion for a new trial were, that the court erred in refusing the second, fourth and fifth declarations of law, asked by defendants, and in the declaration of law as made of its own motion, and in admitting the deposition of plaintiff, and that its finding and judgment were contrary to law and evidence.

(*a.*) Was the deposition of the plaintiff admissible?

Section 22, Art. 7, of the Constitution of 1868, which was in force when this case was tried, provides that: "In the courts of this State there shall be no exclusion of any witness, in civil actions, because he is a party to, or is interested in the issue to be tried, etc., etc. *Provided:* That in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify by the court." Gantt's Digest, sec. 2482.

In this case, the plaintiff was not called to testify by the defendant, nor required to testify by the court. His deposition seems to have been taken, in the ordinary mode, on his own behalf, offered in evidence on the trial by his attorney, and admitted against the objection of the defendant.

Part of the deposition is not within the constitutional rule of exclusion.

He states: "I reside in the city of Philadelphia, and am the plaintiff in this suit. I knew John F. Thomas in his lifetime." His place of residence, his being the plaintiff in the suit, and his personal knowledge of the defendant's intestate, were matters not directly connected with the note in controversy—not elements of the particular transaction in issue. These facts he could state without any violation of the rule. But he states further: "He," (meaning Thomas,) "executed the note being sued on just as it is; it has not been altered in the least."

The first clause in this sentence: "He executed the note sued on just as it is;" relates directly to the transaction between him and the deceased in issue. The plea alleged that the words "when called on," which appeared in the note sued on, were not in it when it was executed by Thomas, but were fraudulently added by plaintiff, or by his procurement, after its execution. This was the very matter in issue, and the plaintiff was permitted to testify that Thomas executed the note just as it was when presented at the trial. Such is the substance and effect of the part of the deposition we are considering.

The constitution forbade the plaintiff from testifying as to any transaction with the deceased. The execution of the note by the deceased to the plaintiff was a transaction between them, and whether the note did or did not contain the words "when called on" at the time it was executed was a material element of that transaction, and we think it was incompetent for the plaintiff to testify in effect, as he was permitted to do, that these words were in the note when it was executed. *Giles, adm'r, v. Wright,* 26 Ark., 476; *Stanley* v. *Whitney,* 47 Barb., 587; *Strong* v. *Dean,* 55 Barb., 337; *Stevens, et al., v. Hartley, et al.,* 13 Ohio State R., 531; *Green* v. *United States,* 9 Wallace, 655. The competency of the remaining clause of the sentence, "it has not been altered in

the least," is not free of doubt. The clause, taken with its context, means: The note has not been altered in the least since its execution.

When the note was signed by its maker, and delivered to the plaintiff, its execution was complete, and the personal "transaction" between them, involved in the issue now under consideration, was closed. If the plaintiff altered the note, or procured it to be done, after it was delivered to him, it was an act subsequent to the execution of the note, and the close of the transaction; in other words, the alteration of the note after delivery, if made, was not a transaction with the maker, or any part of a transaction with him.

Suppose the plaintiff had sworn, more specifically, that after the delivery of the note to him, it was not altered by him, nor by his procurement, he would simply have sworn to the non existence of a fact alleged to have transpired after the execution of the instrument. Such testimony would not relate directly to a transaction with the maker of the note, but it might relate inferentially, or argumentatively, to the execution of the note, which was a transaction with the maker of the note. Thus, the note has not been altered since it came into my possession, therefore the words "when called on" must have been in the note when it came into my hands.

The question is a nice one and not free from doubt, but we are inclined to the opinion that when it is competent for a party to testify as to the existence or non existence of a fact, he may be permitted to do so, though his testimony may inferentially affect another fact, or transaction as to which he is incompetent to testify.

But be this as it may, it is sufficient for the purposes of this case, to decide, as we have above, that the court below erred in admitting that clause in the deposition of the plaintiff in which

he swears the "that (Thomas) executed the note sued on just as it is." If the deceased maker of the note had been alive and in court, he might have sworn to the contrary, and the object of the framers of the clause of the constitution in question, was to prevent the living from testifying to transactions with the dead, who cannot be heard in their own behalf, unless the court for the ends of justice, shall require the living adversary to testify.

(*B.*) Did the court below err in refusing the second declaration of law moved by the defendant?

The special plea of *non est factum* was a plea in confession and avoidance. It confessed the execution of the note, and attempted to avoid it by alleging that it had been fraudulently altered after its execution, by the plaintiff, or by his procurement. The *onus probandi* was on the defendant. *Rogers et al.* v. *Diamond*, 13 Ark., 480 ; *Pope* v. *Latham*, 1 Ark., 66 ; *Chism* v. *Toomer*, 27 Ark., 111.

The court made the first declaration of law moved by defendant, that, "if the instrument sued on appears to have been altered, the burden of proof, in the special plea of *non est factum* is shifted to the plaintiff, and it is incumbent on him to explain the appearance."

But the court refused to make the second declaration that, "if the words 'when called on' in said instrument, appear to have been written with a different pen and different ink from the rest of the body of the instrument, and from the signature thereto, this is sufficient evidence to require the plaintiff to remove, by proof, the suspicion thereby attached to the instrument."

Mr. Parsons says : "In the absence of explanation, evident alteration of any instrument is generally presumed to have been made after the execution of it ; and consequently it must be explained by the party who relies on the instrument, or seeks to take advantage from it. Such is the view taken by

many authorities of great weight.   But others of perhaps equal weight, hold that there is no such presumption, or, at least, that the question whether the instrument was written as it now stands before it was executed, or has since been altered, and whether if so altered it was done with or without the authority, or consent of the other party, are questions which should go to a jury, to be determined according to all the evidence in the case." 2 Par. on Contr., p. 721-2.   He cites cases *pro* and *con* in note (7.)

In 1 Smith's Leading cases (Hare and Wallace Notes), 961, conflicting cases are also cited, but no attempt to reconcile them, or to state what rule is supported by the weight of authorities.

We have examined with care the cases cited by counsel for appellant.

*Jackson* v. *Osborn*, 2 Wend., 555:   In this case the plaintiff offered in evidence a deed, in which it appeared that the name of the *grantee* was written on an erasure, in a handwriting different from, and, to appearance, written some considerable time after the residue of the written part of the deed, but (as the greater part of the witnesses thought) not after the signatures of the grantors to the deed.   The court held that the erasure appearing on the face of the deed was a suspicious circumstance, and required some explanation on the part of the plaintiff.

In *Ely* v. *Ely*, 6 Gray, 439, the plaintiff offered in evidence a mortgage, upon the face of which appeared to be interlined a clause of general warranty, etc.   The defendant offering no extraneous evidence in relation to the deed, and it appearing to the court, upon inspection, that the interlineations were in the same handwriting and ink, and that, so far as could be judged by the color of the ink, were made at the same time as the rest of the body of the mortgage, the court allowed the mortgage to be read to the jury, but instructed them that the burden of proof was on the plaintiff to show that the interlineations, etc., were

made before or contemporaneous with the execution of the mortgage, and that, in the absence of all proof to the contrary, as fraud was never to be presumed, the presumption of law was that the interlineations, etc., were made prior to or contemporaneously with the execution of the mortgage. The Supreme Court said that upon the question of the interlineations, the court below rightly instructed the jury that the burden of proof was upon the plaintiff to show that they were made before the delivery of the mortgage. But that the further instruction that, in the absence of all proof to the contrary, the presumption of law was that the interlineations, etc., were prior to or contemporaneous with the execution of the mortgage, was wrong; that there is no such legal presumption; that the burden is on the party offering the instrument to prove its genuineness, and that alterations apparent on its face were honestly made. To what extent he shall be required to introduce evidence will depend upon the peculiar circumstances of each case. The alterations may be of such a character that he may safely rely upon the paper itself, and the subject matter, as authorizing the inference that the alteration was made before the execution, or he may introduce some very slight evidence to account for the apparent interlineation. But there is no presumption of law, either that the alterations and interlineations apparent on the face of a deed were made prior to the execution of the instrument, or that they were made subsequently. That question is to be settled by the jury, upon all the evidence in the case offered by the parties, and the surrounding circumstances, including, of course, the character of the alterations and the appearance of the instrument alleged to have been altered.

In *Wheat* v. *Arnold*, 36 Georgia, 482, the plaintiff offered in evidence the note sued on, and its admission was opposed on the ground that it had been altered, erased, interlined, ante dated,

increased to a larger amount, etc. *Held* that if, on the produc-
tion of an instrument, it appears to have been *altered*, it is incum-
bent on the party offering it in evidence to explain this appear-
ance.

In *Hill* v. *Cooley*, 46 Penn. State R., 260, it was alleged that
the words *"Payable at N. Holmes & Son"* had been added to the
note sued on, and offered in evidence by the plaintiff, after it was
signed, and the appearance of the note favored the allegation.
The words were admitted to be in the handwriting of one of the
payors who wrote the body of the note. Had they been written
in a straight line from where they started, they would have inter-
fered with the signature, but they started upward so as to avoid
it, and they gave the paper a very suspicious aspect. The court
held that the words added were a material alteration, were sus-
picious in appearance, and that the onus of explaining them was
on the plaintiff, before the admission of the note.

In *Porter* v. *Doby*, 2 Richardson's Eq. Rep., 51, it appeared
that the seal was carefully cut from the obligation offered in evi-
dence, leaving a mere filament by which it was allowed to remain
attached to show what had been the character of the instrument.
The seal was as effectually destroyed as if it had been crossed or
erased. Held that the alteration was attributable to him who
had been in possession of the instrument, unless he accounted
for it.

In *Shelden* v. *Hawes*, 15 Mich., 522, it was alleged that the
words *"at ten per cent. interest"* had been interpolated in the note
sued on. They were in different ink from the rest of the note,
and not written in a manner usually to be expected in such pa-
pers. It was held that the alteration being peculiar in appear-
ance, and favorable to the plaintiff by adding three per cent. to
the interest, created sufficient ground of doubt to require some
explanation.

In *Dow* v. *Jewell*, 18 New Hamp., 356, and in *Burnham* v. *Ayer*, 35 ib., 352, held that when a material alteration or erasure appeared on the face of the deed, the presumption would be that it was done after execution, unless accounted for by the party producing it.

In *Cole* v. *Hills*, 44 New Hampshire, 234, a later case than those cited from the same State by the counsel for the appellant, the court, after a review of cases, said: "It seems to us, then, that the proper rule is that the instrument, with all the circumstances of its nature, its history, the appearance of the alteration, the possible or probable motives to the alteration, or against it, on the part of all persons connected with it, or in whose possession it may have been, and the effect of the alteration upon the rights and obligations of the parties, respectively, ought to be submitted to the jury, who should find from all these whether the alteration was made before or after its execution, and if after, whether it was with the assent of the adverse party, and, consequently, whether it rendered the instrument invalid or not. Whether the handwriting of the alteration is the same with the body of the instrument, whether it is the same with that of the signature, whether the ink is the same or different, whether, from the appearance, the body of the instrument and the alteration were written at the same time or at different times, whether the party claiming or the party sought to be charged is to be benefited by it, whether the alteration was made before or after its execution, and if after, by whom, and for what purpose, are all questions of fact for the consideration of the jury. It could serve no good practical purpose for the court to go into these inquiries first, to determine whether a party has made a *prima facie* case. Upon the usual proof of the execution of the instrument, it should, without reference to the character of any alteration upon it, be admitted in evidence, leaving all testimony in

relation to such alteration to be given to the jury, with proper instructions upon the facts in each case. *Beaman* v. *Russell*, 20 Vt., 205; *Baily* v. *Taylor*, 11 Conn., 331. In ninety-nine cases in every hundred the jury would be able to settle the question readily upon a preponderance of the evidence, where they should consider the paper in connection with all the circumstances above stated. But if they should not be able to do so, and could not find any preponderance of the evidence as to when the alteration was made, or if there is an entire absence of evidence and of circumstances, both in the instrument and in the evidence *aliunde*, from which an inference can be legitimately drawn as to the time when it was actually made, then the presumption arises that the alteration was made after the execution of the instrument; and this is a presumption of fact which the jury are to make under the proper instructions of the court, where they shall be unable to find the fact from any evidence or circumstances in the case. That is clearly the doctrine of our decisions. *Hill* v. *Barnes*, 11 N. H., 395; *Burham* v. *Ayer*, 35 N. H., 354.

We have also carefully examined the cases cited by counsel for appellee.

In *Hunt* v. *Gray*, 35 New Jersey, 228, the court said: "There was a material interlineation apparent on the face of the note in suit, and the first question which arose at the trial was whether the plaintiff was bound to explain such circumstance before resting his case. Prof. Parsons, in his treatise on Contracts, vol. 2, p. 228, says ' that, in the absence of explanation, evident alteration of an instrument is generally presumed to have been made after execution of it, and consequently it must be explained by the party who relies on the instrument, or seeks to take advantage of it.' This doctrine is assuredly sustained by many authorities, but the learned author just referred to admits that the opposite view has an equal sanction in judicial opinion. In England there are several cases to the effect that if a bill or note exhibit the

Gist, adm'r, vs. Gans.

appearance of alteration, the holder must account for it. But these decisions are all of recent date, and appear to be based as much on reasons derived from the policy of the stamp acts as from considerations resting on the general principles of the law. On the other hand, a large number of the authorities in this country adopt the rule that when an alteration exhibits itself on the face of an instrument, it must be submitted to the jury with attendant circumstances, and that there can be no judicial presumption founded on inspection that the change was made after the execution of the paper, whether under seal or otherwise. The cases on both sides of this question are collected with much fullness in the notes to the last edition of Smith's Lead. Cas., vol. 1, part 2, p. 1168. But whatever the rule of law in this respect may be elsewhere, the practice in this State has always been to refer, under ordinary circumstances, the question as to the time of the alteration of a written instrument to the consideration of the jury. The mere fact that the writing presents symptoms or evidence that a change has been made in the language employed, does not of itself create a legal intendment that such alteration was effected subsequently to the perfection of the contract."

In *Den* v. *Wright*, 2 Halst. (N. J.), 176, on motion to overrule a deed on account of two alleged erasures and alterations which had not been accounted for, the rule was directly put in force that it is the province of the jury to decide whether an alteration be made before or after the sealing of the instrument. Same view of the case in *Cumberland Bank* v. *Hall*, 1 Hals., 215.

In *Davis* v. *Jenny*, 1 Met., 221, the question as to when the alteration of the bill was made was left to the jury on the appearance of the paper, its character, relations of the parties, etc. Chief Justice Shaw expressing no opinion as to the presumption of law.

In *Gooch* v. *Bryant,* 13 Maine, 389, there was no other evidence of the alteration of the note than what arose from inspection, from which it appeared that one of the figures in the date had been altered. The important inquiry, said the court, was when the alteration was made. " If altered after signing and delivery, it would vitiate the note ; if before, it would not. As to the time, no evidence was offered by either party. The alteration was not, in itself, proof that it was done after signature; it might have been made before. If the alteration was *prima facie* evidence that it was done after, it must be upon the ground that such is the presumption of law. But we do not so understand it. It would be a harsh construction, exposing the holder of a note, the date of which had been so altered as to accelerate payment or to increase the amount of interest, to a conviction of forgery unless he could prove that it was done before signature. It would be to establish guilt by a rule of law when there would be at least an equal presumption of innocence. But such cannot be the law ; it is a question of evidence, to be submitted to the jury."

In *Beaman's adm'r* v. *Russell,* 20 Vermont, 213, after a review of English and American cases, the court said : " Amid the conflict of authorities in this country, and with the little aid that can be derived from the modern English cases, I should be disposed to fall back upon the ancient common law rule, that an alteration of a written instrument, if nothing appears to the contrary, should be presumed to be made at the time of its execution. I think this rule is demanded by the actual condition of business transactions of this country, and especially of this State, where a great portion of the contracts made are drawn by the parties to them, and without great care in regard to interlineations and alterations. To establish an invariable rule, such as is claimed in behalf of the defendant, that the party producing the

paper should, in all cases, be bound to explain any alteration by extrinsic evidence would, I apprehend, do injustice in a very great majority of the instances in which it should be applied. Such a rule might be tolerated—might, perhaps, be beneficially adopted—in a highly commercial country like Great Britain, in regard to negotiable paper, which is generally written by men trained to clerical accuracy, and is upon stamped paper, the very cost of which would induce special care in the drawing of it, but I am persuaded that its application here could not be otherwise than injurious. It is not often that an alteration can be accounted for by extraneous evidence, and to hold that, in all cases, such evidence must be given, without regard to suspicious appearances of the alteration would, I think, in many instances, be doing such manifest injustice as to shock the common sense of most men."

In *Wickes* v. *Cauld*, 5 Harris & John., 41, the names of the attesting witnesses were erased from the deed offered in evidence, but whether before or after execution did not appear: Held, that it was incumbent on the party wishing to avoid the deed to prove that the erasure was made after its execution ; that the court was not bound to presume that the erasure was made by the grantee, or those claiming under him, after the execution of the deed.

In *Clark* v. *Rogers*, 2 Greenleaf, 147, it appeared that names were added to the instrument offered in evidence: Held, that fraud or forgery was not to be presumed. We have also examined a number of authorities not cited by the counsel for the parties.

In *Huntington et al.* v. *Finch & Co.*, 8 Ohio State Rep., 449, the court said : " The rule established by the greater weight of authority, both in England and in this country, appears to be that when the alteration is suspicious, and beneficial to the holder

of the paper, the party seeking to enforce it is required to explain it before he can recover; but when the alteration is not peculiarly suspicious and beneficial to the holder, the alteration will be presumed to have been made either before the execution of the paper or by the consent of the parties." This rule, in effect, is supported by *Bailey* v. *Taylor et al.*, 11 Conn., 531; *Tillon* v. *Clinton & E. Ins. Co.*, 7 Barb. S. C., 565; *Stoner* v. *Ellis*, 6 Ind., 161; *Farnsworth* v. *Sharp & Co.*, 4 Sneed, 56.

Mr. Greenleaf says: "Generally speaking, if nothing appears to the contrary, the alteration will be presumed to be contemporaneous with the execution of the instrument. But if any ground of suspicion is apparent upon the face of the instrument, the law presumes nothing, but leaves the question of the time when it was done, as well as that of the person by whom, and the intent with which the alteration was made, as matters of fact, to be ultimately found by the jury, upon proofs to be adduced by the party offering the instrument in evidence." 1 Greenleaf Ev., sec. 564.

In this State we all know that many instruments are written by unskillful persons, and that erasures, interlineations, etc., frequently appear on the face of notes, bonds, bills, deeds and other contracts. We are, therefore, not disposed to sanction a more rigid rule than that expressed in the paragraph above copied from 3 Ohio State Rep., which seems to be in harmony with the views of Mr. Greenleaf.

Persons holding and expecting benefit from instruments have two motives not to alter them: *First*—If the alteration be material it avoids the instrument; and *Second*—It is a criminal act. Yet such alterations have frequently been made by persons who hoped to avoid detection and escape punishment. If the alteration is suspicious, and beneficial to the party producing and relying on the instrument, it is, perhaps, incumbent on him to explain it, but the question is for the jury on the appearance of the

instrument, circumstances connected with it, and any evidence introduced by the parties.

In this case the plaintiff read the note in evidence without objection, and was permitted to read his own deposition. Defendant called a merchant of experience, who was of opinion that the words "when called for" were written with different pen and ink from the body and signature of the note. There seems to have been no indication, however, on the face of the instrument that they were written at a later period. They might have been added, the witness conceded, with a different pen and ink at the time the note was executed.

Whether there was anything in the appearance of the words alleged to have been added to the note after its execution calculated to awaken suspicion that the instrument had been tampered with we do not know, as the original is not before us. The court below could judge better of this than we can.

We cannot hold, therefore, that the court erred in refusing to make the second declaration of law moved by the defendant.

It was the province of the court, sitting as a jury, to determine the issue from the appearance of the instrument, and the evidence submitted in connection with it. The law raised no presumption that the instrument had been fraudulently altered by the plaintiff.

The court found the issue for the plaintiff, and we should not be disposed to disturb its finding if the deposition of the plaintiff had been excluded, but a portion of it was, as we have seen, incompetent, and we cannot undertake to say that the finding was not influenced by the incompetent portion of the deposition.

(c) The court below, in refusing the fourth declaration of law asked for plaintiff, and in making a contrary declaration of its own motion, decided, in effect, that the note sued on was not a property note, but a money note, with a privilege to the maker

to discharge it in cotton, and that demand before suit was not necessary.

In *Jeffrey* v. *Underwood*, 1 Ark., 108, the instrument was: "On or before the 25th of this month I promise to pay John· I. Underwood fifty dollars, to be paid in a horse, to be valued against good trade, for keeping the mare." The instrument was sealed. Held, that it was a property obligation, and debt would not lie upon it.

In *Hudspeth et al.* v. *Gray & Co.*, 5 Ark., 157, the note was a promise to pay William F. Pope, or order, ninety days after date, $702.30 in Louisiana funds, with interest, etc. : Held, that it was not a money note, but payable in the bank notes of Louisiana, issued for circulation, and that neither debt nor indebitatus assumpsit would lie on the note. That a special action on the case in assumpsit was the proper remedy.

In *Day et al.* v. *Lafferty,* 4 Ark., 450, the obligation sued on was : "$129.50. By the first of April next we promise to pay Lorenzo D. Lafferty one hundred and twenty-nine dollars and fifty cents, for value received, payable in current Arkansas bank notes." Dated 24th December, 1840. Signed and sealed by the obligors.

The defendants pleaded tender after the day of payment named in the obligation, and a demurrer was sustained to the plea. This court, by Mr. Justice Dickinson, said : "We consider the law well settled that, if a party consents to pay specific articles, he must meet his contract at the time and in the manner specified. Tender cannot be made after the day, unless the damages are capable of being reduced to certainty by computation, nor can it be pretended that it is possible to do so, in this instance, without the intervention of a jury. Even if a party failed to make a defense, a writ of inquiry must issue to ascertain the damages. It is, therefore, not one of those cases in which the doctrine of

tender is applicable." The effect of this decision is that the obligation sued on was not payable in money but in bank notes, the value of which would have to be assessed as damages.

In *Gregory* v. *Bewley et al.*, 5 Ark., 318, an action of debt was brought on the following obligation: "One day after date we, or either of us, promise to pay to Hawkins Gregory, executor, etc., the sum of two hundred and twenty-seven dollars and twenty-five cents, with interest, etc., which may be discharged in Arkansas money, for value received." Signed and sealed January 26th, 1842. A demurrer was interposed to the declaration, on the ground that the action should have been covenant, and not debt: Held, in effect, that the obligor had the privilege of paying the obligation in Arkansas money at its maturity, but failing in that, the obligation lost its alternative character, and became a simple and absolute bond for the direct payment of money, and that debt would lie.

In *Vance* v. *Bloomer*, 20 Wend., 196, the note was: "Due G. Bloomer or bearer 44 dollars 30 cents, to be paid in ready-made clothing after this date." Held, that it was a property note, and there must be a demand of clothing and refusal before suit. See cases cited.

In *Crockett* v. *Moore, adm'r*, 3 Sneed, 147, debt was brought upon the following note: "Due James Hunter eight hundred dollars, payable in good bar iron, at six and one-fourth cents a pound, being for value received of him this 24th April 1841." The instrument was sealed, and it was insisted that the action should have been covenant and not debt. The court conceded it to be a property obligation, but held that on failure to pay it in iron, the price of which was fixed in the instrument, the measure of damages was the sum named in the obligation, which being a sum certain, debt would lie. Similar ruling in *Marrigan* v. *Page*, 4 Humph., 247, where the promise is to pay a stated sum by a

day named, which may be discharged in cotton at the market value, to be delivered at a place mentioned, it is a property note up to the day of payment, but if the promisor fail to avail himself of the privilege of paying in cotton by the day named, then the sum stated in the note becomes a money debt. *Bloomfield* v. *Hancock,* 1 Yerger, 101; *Lawrence* v. *Dougherty et al.,* 5 Yerger, 435.

But such is not the character of the note before us. The sum to be paid is stated; the place where the cotton was to be delivered is mentioned, and the price per pound fixed, but no time of delivery was agreed on; the maker of the note was to deliver the cotton at Des Arc, when called on. Until demand and failure to deliver the cotton the maker of the note was not in default. "Due Leon Gans $895.25, borrowed money and payment for a mule, for which I promise to deliver cotton at Des Arc, at eight cents per pound, when called on." The plaintiff it seems, loaned the promisor some money, (Confederate, perhaps, from the date and place named in the note,) and let him have a mule, and the money and price of the mule amounted to the sum named in the note, which was to be paid in cotton delivered at Des Arc, at the rate per pound agreed on, when demanded. Such, we think, is the manifest meaning of the contract, as indicated on its face. Could the plaintiff have sued the maker of the note immediately upon its execution without demanding the delivery of the cotton ? Had the maker of the note taken the cotton to Des Arc on the next day, without demand, and offered it to plaintiff, would he have been obliged then to accept it ? We think both questions must be answered in the negative.

Perhaps if the plaintiff had delayed making the demand for an unreasonable length of time, the maker of the note would have been privileged to tender the cotton without demand, but surely the plaintiff could not convert a cotton into a money debt by

merely neglecting to call on the debtor for the cotton. If, while the maker of the note was living, the plaintiff had sued him in the Circuit Court on the note, he would have been obliged, we think, to aver a demand of the cotton, and failure to deliver it before suit, and if this allegation had been put in issue by a proper plea, the plaintiff would have been bound to prove it on the trial, or fail in his action. But Thomas, the maker of the note, died, (the record does not show when,) and Gist, the appellee, became his administrator. Suppose the plaintiff had gone to him, after he had qualified as administrator, with the note, and demanded that he deliver at Des Arc cotton enough at eight cents a pound to pay the note, could the administrator legally have complied with such demand? Surely not, because, under our system of administration, all claims against the estates of deceased persons, payable out of the general assets, must be properly authenticated, allowed, classed and ordered paid by the Probate Court, before the administrator can legally pay them. *Walker, as adm'r,* v. *Byers,* 14 Ark., 246.

The plaintiff, therefore, pursued the proper course with his claim. He authenticated it by affidavit, and on the 20th day of July, 1867, caused a notice to be served on the administrator (furnishing a copy of the claim) that on the 12th of August of the same year, he would present the claim to the Probate Court for allowance and classification. We have above stated what proceedings were had in the Probate Court.

The case was tried in the Circuit Court on the appeal, 5th September, 1872, and judgment rendered in favor of the plaintiff for $895.25, the sum specified in the note, with six per cent. interest added, not from the date of the note, but from the time the notice was served on the administrator, making the total sum of $1,170.50, with an order that the judgment be certified to the Probate Court.

There may be claims that take precedence of this, or the estate may be insolvent, and only a *pro rata* can be paid on it. How then could the administrator, upon demand of him, and in advance of any action by the Probate Court, legally undertake to pay the debt by delivering cotton at Des Arc at eight cents per pound?

It was a claim properly adjustable in the Probate Court, to which the plaintiff resorted.

But, for the error of the court below in admitting the plaintiff's deposition, as above indicated, the judgment must be reversed and the cause remanded for a new trial.