### JOSEPHS v. BRIANT.

### Opinion delivered May 5, 1913.

1. ADMINISTRATION—CLAIMS AGAINST ESTATE.—Under section 113 of Kirby's Digest, which requires that when the claim against an estate is founded upon an account, that the claimant present a copy of the account "setting forth each item distinctly and the credits thereon * * *," where plaintiff's claim recited that it was for "legal services rendered to deceased in the suit for divorce in which he was involved * * * to trip from H to M, J and other places and securing evidence which was used in his suit for divorce, $10,000. The proof will show that S, in his lifetime and not long before the demise employed Mrs. B (claimant) to do certain work, and on his own motion agreed to pay her $10,000," the account will be held sufficient, and it will be held that the executor was informed that the claim was for $10,000, and not $10. (Page 178.)

2. WITNESS—COMPETENCY—TRANSACTIONS WITH DECEASED—In an action by a claimant to enforce a claim against deceased's estate, evidence that deceased owed claimant $10,000 upon a contract for services, and that no part of the same had been paid, is incompetent under section 2 schedule to the Constitution which prohibits either party in actions by or against executors * * * from testifying against the other "as to any transactions with or statements of the testator * * * " (Page 179.)

3. CONTRACTS—SUPPRESSING EVIDENCE—ILLEGALITY.—A contract to procure evidence to win a divorce suit for the deceased, or to secure the possession of certain letters for the purpose of preventing their use against him as testimony in a divorce case, is illegal and void; but a contract to procure letters for deceased which does not contemplate using them for an illegal purpose, or suppressing them, is valid. (Page 180.)

4. CONTRACTS—SUPPRESSING EVIDENCE—ILLEGALITY.—A contract to secure letters for deceased in order to suppress them as evidence, is void when plaintiff was aware of and participated in that

design, but a contract by plaintiff merely to secure letters for deceased to prevent their being unlawfully mailed to a third person, would be valid. (Page 181.)

5.  TRIAL—INSTRUCTIONS—IGNORING TESTIMONY.—In an action by plaintiff against testator's estate for services rendered testator, for procuring certain letters for him, an instruction that if plaintiff and the testator made a contract to procure the letters which had been written by the testator was valid, if the letters were not used as evidence in any suit in which the testator was interested, plaintiff could recover, is erroneous because the instruction ignored other testimony in the record which tended to show that there was an agreement covered by this same consideration to procure other testimony with which testator might win his divorce suit. (Page 182.)

6.  CONTRACTS—PROCURING TESTIMONY—VOID WHEN.—A contract is void as against public policy by which one of the parties thereto agrees to secure such testimony as will enable the other to win a contemplated suit. (Page 183.)

7.  CONTRACTS—SUPPRESSING TESTIMONY.—A contract to suppress or enable another to suppress or conceal testimony is void as against public policy. (Page 183.)

8.  CONTRACTS—LEGALITY—VIOLATION OF FEDERAL LAW.—An agreement whereby plaintiff agreed to procure certain letters and return them to the testator, if otherwise valid, is not invalid or illegal when the parties agreed that the letters should be mailed to the testator, although the letters were nonmailable under the Federal statute. (Page 183.)

Appeal from Lawrence Circuit Court, Eastern District; *R. E. Jeffery,* Judge; reversed.

*H. S. Ponder, Stuckey & Stuckey* and *Campbell & Suits,* for appellant.

1.  The alleged contract was contrary to law. 30 Ark. Law Rep. 417; 29 *Id.* 517; 97 Ark. 153; 95 *Id.* 552; 85 *Id.* 106; 81 *Id.* 41; 46 *Id.* 420. It contemplated the violation of the law in the performance thereof. 170 Fed. 409; 160 *Id.* 700; 183 *Id.* 719; 188 *Id.* 450; 200 *Id.* 219.

2.  The claim was not duly authenticated, nor presented for allowance. 30 Ark. Law Rep. 474; 45 Ark. 392; 15 *Id.* 345.

3.  The affidavit is not such as is required by Kirby's Dig., § 114. Nor was a copy delivered to the executor. *Ib.,* § 113.

4. Incompetent evidence was admitted and the court erred in its charge to the jury. 22 Vt. 433; 54 Am. Dec. 83; 2 Fed. Stat. Ann. 123, § 3563.

5. The contract was immoral and contrary to public policy. Cases *supra.*

*L. C. Going,* for appellee.

1. The contract was not contrary to law, nor did it contemplate a violation of law. It was simply a contract to secure certain letters.

2. The claim was duly authenticated, proven and notice and copy waived.

3. No incompetent evidence was admitted.

4. The account showed on its face a valid claim.

5. The charge of the court was correct; no errors are pointed out. There was no proof that the contract contemplated a performance in a manner prohibited by law.

McCulloch, C. J. Appellant's testator, A. W. Shirey, lived at Minturn, Lawrence County, Arkansas, and was assassinated in March, 1910, and appellant qualified as executor of his last will and testament. Appellee, Mai Briant, presented to the executor an authenticated claim against the estate for the sum of $10,000, for services· alleged to have been performed by her for decedent under a verbal contract with him. The claim was presented in the following form:

"Mrs. Mai Briant account v. the A. W. Shirey Estate. To legal services rendered to the said A. W. Shirey during his lifetime in the suit for divorce in which he was involved, said services being, rendered at his request and solicitations.

ACCOUNT.

"To trip from Hope to Minturn,. Jonesboro and other places and securing evidence which was used in his said suit for divorce....$10,000.

"The proof will show that Shirey in his lifetime, and not long before his demise employed Mrs. Briant to do certain work and on his own motion agreed to pay her $10,000."

Then follows an authenticating affidavit duly made before a notary public.

The executor declined to allow the claim, and it was presented to the probate court for allowance.

On appeal to the circuit court from the judgment of the probate court, the case was tried before a jury, and the trial resulted in a verdict in favor of appellee for the full amount of the claim.

The evidence tends to show that A. W. Shirey was an illiterate man of many eccentricities. He belonged to that religious sect or cult commonly known as Spiritualists, and was often made the prey of those who were disposed to take advantage of his credulity by offering aid to him in varied and extensive business transactions and in litigations. He had been married several times, and at the time of the transactions involved in this controversy was living separate and apart from his wife, a young woman whom he had married after he became an old man. A divorce suit had been pending between the two, which had resulted in the court refusing to grant a divorce at the request of either party, and there is evidence tending to show that he contemplated renewing the suit.

The claimant, Mrs. Briant, was Shirey's grandniece, and the testimony which she adduced shows that she was a favorite with him, often visiting his house, accompanied by her daughter, a small child. She formerly resided at Harrisburg, Ark., but at the time of these transactions she was living at Hope.

She introduced in evidence the following letters, which the testimony tends to show were written to her by Mr. Shirey:

                                        "Minturn, Ark.
              A. W. Shirey, General Merchandise.
Dear Sweet Niece May:

I send you $20.00 come if you will Try what I wrote you i will pay you $5,000.00 fore your services And if you succees i Will pay you double That. it Is not A big fee fore I have paid that much before. I Hape the dr.

Will not care fore helping Me any Thing you want To write since your Enitils and There will be no Danger I look fore you at Onct Bring Hortence to i love Her like you.

Yours Truly,
A. W. Shirey.''

''Minturn, Arkansas, Sept. 15, 1909.
A. W. Shirey, General Merchandise.

Dear May

I Received yours of the 8. I have been out on the Fars, Estimating The crops For About A Week past, Is why I did not Acknowledge Receipt of your letter sooner. If it will not In convenience You will be glad to have you Call Maba Hortence Can Eat out of the Skillet A time or two If she Still likes it I want to settl with you when you can come. We find that the cotton here will average no more than 7L OR800 lb¼. The corne is AN average Crop.

A. W. Shirey.''

''Minturn, Arkansas, Dec. 23, 1909.
A. W. Shirey, General Merchandise.

Dear niece

I did want you to com and spend Christmas with me So we could fix up Business but i am afrade it will not be safe For you to come. it greavs my soult That I am fixed as I Am but it Seams to be my Destiny It may End some Time if it dont i Will hope you are always comfortable and hapy If i go first you will not want fore nothing fore you and hortence you Are Like my children you Did what no lawyer could or would doe for Me It is worth more Than I told you i would pay. Mabe you can Meet Me in St. Louis when i go to buy spring Goods and we can settle then, I Will give you $5,000.00 Then any way and mabe can pay you the other $5,000.00 too I mean fore to pay much More than This when my truble Ends The more happiness In the world The Better it is fore the World and all in it.

Yours truly,
A. W. Shirey.''

The first of the letters, including the signature, was typewritten, but there was some evidence tending to show that it was written on letter paper commonly used by him and was probably his letter.

Other testimony introduced tends to show that prior to this time Mr. Shirey had consulted a woman who claimed to be an adept in the art of fortune-telling or clairvoyance, and that she had induced him to write some letters, addressed to his wife, which contained profane, abusive and threatening language.

These letters were turned over to the woman for the pretended purpose of showing to Shirey's wife to induce or coerce her into a compromise. The letters remained in the possession of the clairvoyant, who resided at Little Rock, and the theory of appellee is that the service to be performed by her in consideration of payment of $10,000 was the procurement of the letters from the woman and their return to Shirey. She testified that she met the woman in Little Rock by appointment and finally induced her to part with the letters in consideration of the payment of the sum of $50, and that she (appellee) returned the letters to Shirey by mail from Little Rock.

Appellee introduced as a witness her daughter, who was twelve years old at the time of the trial, and about nine years old at the time of the transaction under investigation. The child testified, in substance, that she accompanied her mother to Minturn for the purpose of visiting her uncle in the spring of the year 1909, and that she was present at a conversation between the two in which an agreement was entered into whereby her uncle, Mr. Shirey, was to pay appellee the sum of $10,-000 to get the letters back from Madam Rupert and return them to him, and to get other evidence for him to be used in his divorce case. She testified that the letters were to be used as evidence in the divorce case and that the agreement was that her mother was to procure the evidence to win the divorce case. She also testified that she accompanied her mother on a trip to Jonesboro

and heard her and Shirey talk about getting evidence to win his case. The testimony of the child is copied voluminously in the record and is to some extent contradictory, but she distinctly stated that the letters to be procured were to be used as evidence in the divorce case and that according to the conversation she heard between them her mother was to procure for her uncle evidence to win his divorce case.

Another witness introduced by appellee testified that he had a conversation with Mr. Shirey, in which the latter told him that he would employ appellee to get the letters back from Madam Rupert, and that he later told witness that appellee had gotten the letters and returned them to him; that the letters, if used against him in the divorce case, would prevent him from getting a divorce, and that he wanted to get the letters back in his possession.

Still another witness introduced by appellee testified to conversations with Shirey, in which the latter told him that he had employed appellee to get the letters back from Madam Rupert and was going to "pay her well;" that if she didn't accomplish the things he had asked her to do that he (Shirey) would be ruined; and afterwards Shirey stated to him that he had gotten the letters, and he was going to pay appellee well for the work.

The court permitted appellee to testify, over appellant's objection, as follows:

"Q. How much, if anything, does the estate of A. W. Shirey owe you? A. Ten thousand dollars. Q. Has any portion of it been paid? A. None whatever; no, sir."

After the case had been closed by both sides, appellee was recalled to the witness stand and, over appellant's objection, permitted to testify as follows:

"Q. Did you procure any evidence to be used in any contemplated suit? A. I never procured any evidence to be used in any suit whatever, pending or to be brought."

It is insisted, in the first place, that the account presented to the executor was not sufficiently specific and that the evidence does not bring the claim within the terms named therein. It is also argued that on account of the punctuation, the amount is stated in the claim as $10, instead of $10,000, as now contended, and that there could be no recovery beyond the former amount.

The statute concerning the presentation of claims against the estates of deceased persons only requires the claimant, where the claim is founded on an account, to present a copy of the account "setting forth each item distinctly and the credits thereon, if any." Kirby's Digest, § 113. Written pleadings, in the strict sense of the word, are not required, and it is sufficient if the items of the account be stated in general terms.

There is no controversy that the executor was informed at the time of the presentation of the claim that the sum of $10,000 was demanded, and there is no indication that the executor was misled either at that time or at the trial to the prejudice of the case; in other words, there was sufficient to apprise the executor and his counsel of the nature of the claim presented against the estate, and our conclusion is that the account as presented was sufficient to let in proof of services of the nature indicated by the testimony of the witnesses who were introduced in the case.

The rulings of the court in permitting appellee to testify as above indicated were clearly erroneous and call for a reversal of the case. Appellee based her claim upon an oral contract, which she undertook to establish by certain letters alleged to have been written by Mr. Shirey, by the testimony of her daughter concerning a conversation between appellee and Shirey, and by the testimony of other witnesses concerning statements alleged to have been made to them by Shirey, in which he stated that he had engaged appellee to do certain things and agreed to pay her well for the service, or would do so.

Appellee sued upon the alleged contract for the specific amount which she claimed that Shirey had agreed to pay her. The issue in the case was whether or not such an agreement had been entered into, and the only force which her testimony could have had before the jury would have been to establish the fact that Shirey owed her the sum of $10,000 upon contract for the services which she alleged that she had performed for him. Her testimony was of a negative character, but its direct tendency was to establish the fact that Shirey had contracted to pay her the sum named for certain services, and that he had failed to do so. This was clearly incompetent under the provision of our Constitution which prohibits either party, in action by or against executors, or administrators, or guardians, from testifying against the other "as to any transactions with or statements of the testator, intestate or ward." Section 2, Schedule to Constitution.

Under the rule announced in the following cases the testimony clearly related to a transaction with the decedent, and appellee was incompetent as a witness to testify concerning the same. *Gist* v. *Gans,* 30 Ark. 285; *Jarvis* v. *Andrews,* 80 Ark. 277; *Williams* v. *Walden,* 82 Ark. 136.

In *Gist* v. *Gans, supra,* it was held that the plaintiff in a suit on a note against the estate of a decedent was incompetent as a witness to prove that at the time the note was executed by deceased it contained certain words found therein when presented at the trial. The court said:

"The execution of the note by the deceased to the plaintiff was a transaction between them, and whether the note did or did not contain the words 'when called on' at the time it was executed was a material element of that transaction, and we think it was incompetent for the plaintiff to testify in effect, as he was permitted to do, that these words were in the note when it was executed."

In *Jarvis* v. *Andrews, supra,* the testimony of one

of the parties was offered to show that he did not execute and deliver the promissory note in controversy, and in disposing of the question of the competency of the witness, the court said:

"Testimony negativing the existence of a transaction in issue is as much within the inhibition as testimony affirming the existence of the transaction. The testimony was properly rejected."

The principles of law which control in this case are clearly set forth in the recent case of *Neece* v. *Joseph,* 95 Ark. 552, which involved a very similar question, and also involved a claim against the estate of Shirey. We held in the case (quoting the syllabus) that "a contract is void as against public policy by which one of the parties agrees to secure such testimony as will enable the other to win an existing or contemplated suit." It was pointed out in that case that it was not unlawful to enter into a contract to obtain evidence in a lawsuit, but the illegality consisted of a provision that the evidence "to be procured should be of a given state of facts, of a tendency to enable defendant to win his suit." In other words, it was held that an undertaking to procure evidence in a case could be the subject-matter of a valid contract but that a contract to procure testimony of a certain nature or to establish a certain issue was contrary to public policy and void.

There are other decisions of this court illustrating the invalidity of contracts for unlawful or immoral purposes. *Mendel & Bro.* v. *Davies,* 46 Ark. 420; *Carey* v. *Watkins,* 97 Ark. 153; *Eager* v. *Jonesboro, Lake City & Eastern Express Co.,* 103 Ark. 288.

In *Mendel & Bro.* v. *Davies, supra,* the court concisely stated the rule:

"Where the ground of a promise on one part, or the thing promised to be done on the other part, is unlawful, the courts will not enforce the contract for either party."

Applying that principle to this case, if, as the testimony shows, the appellee, Mrs. Briant, entered into

a contract with Shirey to procure evidence to win his divorce case, or to secure the possession of the letters for the purpose of preventing their use against him as testimony in the divorce case, the contract was illegal and void and can not be recovered upon. If, on the other hand, the procurement of the letters was the only service to be performed by her, and she was unaware of any unlawful or immoral purpose on the part of Shirey in obtaining possession of the letters, and undertook for a consideration to obtain possession of the letters which he had written and delivered to Madam Rupert, then the contract was not illegal. In other words, if the only purpose was to recover the letters without any design on his part, known to her, to suppress them, and if the agreement did not embrace an undertaking to procure evidence to win the divorce case, then it was a valid contract.

There is some testimony indicating that Shirey feared the letters might be used in a criminal prosecution against him for unlawful use of the mails, and if it was shown that it was his purpose to get possession of the letters to suppress them as evidence, and that appellee was aware of and participated in that design, then the contract would be void. But if Shirey merely endeavored to get the letters back to prevent them being unlawfully mailed to his wife, then it would be an innocent design and would not avoid the contract.

The only witness introduced by appellee to establish her claim, who testified directly concerning the details of the contract, that is to say, her daughter, testified that the agreement was that she was to procure the letters and other evidence that would "win the divorce case." The testimony of other witnesses, which related to conversations with Shirey, was to the effect that he procured the letters in order to prevent them being used against him in the divorce case. In fact, the letters were of no value, intrinsically, and the only reasonable inference from the testimony is that the purpose in procuring them was to suppress them.

In that state of the record we can not permit the verdict to stand.

There are other errors in giving and refusing instructions to which attention should be called. Instruction No. 3, given at the instance of appellee, reads as follows:

"If you find from a preponderance of the evidence that plaintiff and A. W. Shirey entered into a contract by the terms of which plaintiff was employed to procure letters written by the said A. W. Shirey, and you further find from a preponderance of the evidence that said letters were not evidence in any suit or were not to be used as evidence in any suit in which the said A. W. Shirey was interested or was to become interested, and that in pursuance of said contract, plaintiff performed the service for which she was employed and that said Shirey agreed to pay her for such service, then your verdict should be for the plaintiff."

This instruction was erroneous in ignoring the testimony of appellee's child to the effect that the contract included the procurement of other evidence to win the divorce case. She testified that such was the contract and that her mother went to Jonesboro and procured the testimony of certain witnesses which she reported to Shirey, who said it was sufficient to win his case. It is true that another instruction was given at the instance of the plaintiff which was perhaps more liberal towards appellant in stating the law as to void contracts than is justified; but the two instructions were conflicting, and were calculated to mislead the jury. The instruction just quoted directed the attention of the jury to the sole question of the procurement of the letters and, as before stated, entirely ignored other testimony in the record which tended to show that there was an agreement, covered by the consideration involved in this suit, to procure testimony with which the divorce suit was to be won.

The following instructions requested by appellant were concise statements of the law applicable to the case and should have been given:

"7. A contract is void as against public policy by which one of the parties thereto agrees to secure such testimony as will enable the other to win a contemplated suit."

"8. A contract is void as against public policy by which one of the parties agrees to suppress or conceal, or enable another to suppress or conceal, testimony as to the existence of facts or letters, papers, or documents material to a contemplated suit."

There is another feature of the case which learned counsel for appellant insist is fatal to the correctness of the judgment and argue that the cause should be dismissed, because the facts are undisputed as to that feature. Appellee testified that she sent the letters back to Shirey by mail, and that this was done by his direction. The contention of appellant is that her undisputed testimony shows that as a part of the contract she was to make use of the mails for the purpose of delivering the letters to Shirey, when secured from the clairvoyant, and that as the letters constituted nonmailable matter it necessarily rendered the contract void.

In the first place, we are unable to say that the testimony of appellee shows indisputably that this was a part of the contract, nor does it show that the letters were nonmailable. None of the letters were read in evidence, but appellee undertook to state in substance the contents and, in doing so, said that they contained threatening and profane language. The Federal statute which is said to have been violated prescribes a penalty for sending "every obscene, lewd, or lascivious, and every filthy book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character." An act of Congress of March 4, 1909, 35 St. At. L. 1129, Fed. Stat. Anno. Supplement 1909, p. 462, § 211. It is by no means certain, therefore, that the language

used in the letters rendered them nonmailable. But even if they were nonmailable and it was agreed at the time of making the contract that they should be transmitted through the mails, we do not regard that as an essential part of the contract so as to invalidate it. The essential part of the contract, if any such contract was, in fact, made, was to procure the letters and return them to Shirey, and the method of transmission was a nonessential part of the contract and a mere incident to its performance. If, under the contract, as appellee attempts to establish it, she obtained the letters and returned them in some lawful manner, she would have thereby earned compensation and would have been entitled to recover, even though the letters had been returned in some way other than that specified. Of course, it is possible to make a contract whereby an essential feature of it is the transmission of nonmailable matter through the mails, and that would render the contract void; but we do not think that there is any evidence here to establish that feature as an essential part of the contract, and we are therefore of the opinion that there is no reversible error in the record on that branch of the case.

For the errors indicated the judgment is reversed and the cause remanded for a new trial.