THOMAS E. PROCTOR *vs.* LYDIA C. WHITCOMB.

Suffolk.   March 28. — June 25, 1884.   DEVENS & COLBURN, JJ., absent.

An accommodation indorser of a promissory note agreed with the maker that it should be "used" only at a certain bank. That bank, with knowledge of the agreement, allowed the maker to draw, from time to time, sums of money, and retained the note as collateral security. *Held*, that the bank was entitled to dispose of its claim against the maker, and to transfer the note as collateral security therefor.

If a person takes a promissory note given as collateral security for a debt less in amount than the face of the note, with the intent to sell the note for its face value, this does not preclude him from maintaining an action on the note for the amount of the debt.

A promissory note, payable in four months, was given to a bank as collateral security for money to be advanced from time to time. The bank, after it had advanced certain sums less than the face of the note, on the failure of the maker before the expiration of the four months, took from him a demand note,

bearing the same date as the collateral note, with a power to sell the collateral security, and sold the two notes to a person who had knowledge of these facts. *Held,* in an action by the purchaser, on the note given as collateral security, to recover the amount advanced and interest, against a person who had indorsed the collateral note for the accommodation of the maker, that interest was to be computed from the time the demand note was given, in the absence of evidence that interest on the debt had accrued before that date.

CONTRACT upon a promissory note for $2500, dated January 9, 1877, payable four months after date, at the Eliot National Bank of Boston, to the order of the makers, Whitcomb and Thayer, and indorsed by them and by the defendant. Writ dated November 16, 1880. The answer admitted the indorsement by the defendant, demand upon the makers, non-payment by them, and a demand upon the defendant; alleged that the defendant indorsed the note for the accommodation of the makers, who agreed with the defendant that no other use should be made of said note than to obtain money thereon at the Eliot National Bank, and that said note should not go out of the possession of said bank; that the makers pledged the note to said bank as collateral security for a loan by the bank to the makers, the bank then knowing the agreement between the defendant and the makers, and agreeing to hold the note in accordance therewith, and not to transfer the same except as authorized by law in case of non-payment of the debt for which the same was pledged; that the bank, without demanding payment of the debt, and without authority therefor, and in violation of said agreement, wrongfully delivered said note to the plaintiff, he well knowing the agreement and the wrongful conduct of the bank, and not being a purchaser of said note in good faith and for value.

After the former decision, reported 134 Mass. 428, the case was tried in the Superior Court, before *Bacon*, J. The plaintiff put in evidence the note set forth in the declaration, stating that he claimed to recover only the sum of $1573.54, with interest from January 24, 1877, and rested his case.

The defendant testified as follows: " I made the indorsement at the request of my son, and I indorsed it for the firm of Whitcomb and Thayer. I did not receive any consideration or anything for indorsing it, and no security for it. At the time I indorsed it and gave it to my son, there was an agreement

between me and him as to where and how that note should be used. It was to be used at the Eliot Bank, and nowhere else. I did not at any time after that ever assent to its being disposed of by the Eliot Bank, or ever know of its being done." On cross-examination she testified, that she had previously indorsed notes for the accommodation of Whitcomb and Thayer; that she gave some to the Exchange Bank, to be used there and nowhere else "It made no particular difference to me whether the note was used at the Exchange Bank or at the Eliot Bank. So far as I know, there was no particular reason why the note should be discounted at the Eliot rather than at the Exchange. Whenever I signed a note I expected it would be used where I signed the note. I don't know as I had any particular reason why it should be used at the Eliot rather than at the Exchange, or at any other bank in Boston, but I supposed it would be so. It could make a difference to me if they got the money at the Tremont Bank rather than at the Eliot Bank, or at the Exchange rather than at the Eliot. I did not want my note going to any place than what I signed it to go to. I thought that was the place it should be discounted."

Lewis B. Whitcomb testified as follows : " I am a son of the defendant and a member of the firm of Whitcomb and Thayer. The firm was formed July 1, 1871, and failed February 9, 1877. Prior to the transaction in regard to the note in suit, we had notes discounted at the Eliot Bank, and in every instance I had occasion to see the plaintiff in regard to them. I should say possibly we had three or four notes discounted there, upon which my mother was indorser; I cannot exactly remember. My mother indorsed in all for us somewhere in the vicinity of six or seven, of which there were sometimes two and sometimes one out at one time. Part were payable at the Exchange Bank and part at the Eliot. I told the plaintiff that my mother had indorsed the note to accommodate us, with the distinct understanding that the note should be used at that bank and nowhere else. I told him this in regard to each note. My mother had no security for any of the notes. They were all accommodation notes. At the time the note in suit was indorsed by my mother, remarks were made between me and my mother that it was given to us for the same purpose that the others had been, to

assist us in our business as an accommodation, to be used, as I
said before, for discount at the Eliot Bank. Nothing more was
said than that. It was said and agreed that it was not to be
used anywhere else. I took the note to the plaintiff and showed
it to him. He told me to take it to the bank and they would
see about it, or attend to it. I took the note to the bank, I think,
on January 9, 1877. It was not discounted, but we were allowed
to draw against it, and we did draw against it. Up to the time
of our failure we had drawn $1573.54, and at the time of our
failure we owed the bank that amount, and the bank held this
note as security. I never authorized the bank to dispose of the
note in suit, nor knew that it had done so until as much as six
months afterwards."

On cross-examination, the witness testified: " We made the
notes payable at those two banks, the Eliot and Exchange,
because they were for accommodation, to be discounted, but
were to be used at that bank and nowhere else was the under-
standing; that was where we did our business; we made them
payable at those two banks because they were put in there to
be used for our accommodation. When we took the note in suit
to my mother to sign she inquired for what use. We told her
that it should be used for us to raise money at the Eliot National
Bank, of course to be discounted, to help us on in our business;
and she said, ' With those considerations, — that it shall be used
at that bank and nowhere else, — I will give it;' and she did;
and that was the distinct understanding with the bank, with the
gentleman I had the conversation with."

Horatio B. Thayer testified that he was a member of the firm
of Whitcomb and Thayer; that on February 10, 1877, the day
after the firm failed, he signed the following note, without read-
ing it, at the request of the cashier of the Eliot Bank:

" 1573 dolls. 54 cts.                    Boston, Jany. 24, 1877.

" On demand, value received, we promise to pay to Eliot
Natl. Bank, with interest, or order, fifteen hundred & seventy-
three dollars $\frac{54}{100}$, for value received, we having deposited, with
this obligation as collateral security with authority to sell the
same without notice, either at public or private sale, or other-
wise, at the option of the holder or holders hereof, on the non-
performance of this promise, he or they giving us credit for any

balance of the net proceeds of such sale remaining after paying all sums due from us to the said holder or holders, or to his or their order, note, — Whitcomb & Thayer, dated Jany. 9, 1877, 4 mos. date, $2500 — order & indorsed ourselves, Lydia C. Whitcomb & Lewis B. Whitcomb; maturing May 9–12, 1877.

"Whitcomb & Thayer."

The plaintiff testified, in his own behalf, that he was a director in the Eliot National Bank, and purchased of the bank the demand note for $1573.54, on February 12, 1877, and took the note for $2500 as collateral security; that, when Whitcomb and Thayer failed, they owed him personally $1800. "I supposed by buying the claim of the Eliot Bank that I could obtain payment in full for part of the debt that Whitcomb and Thayer were then owing me. My thought was this, that the collateral note could be applied by the bank to any indebtedness due to the bank; and if I sold my claim to the bank, they could have applied this collateral note to pay it; and if I bought the claim of the bank with the collateral attached, that I could sell the collateral, and credit it to Whitcomb and Thayer's account. My object in buying the claim was not only to get my money back for the claim that I bought, but to apply the surplus of the collateral to pay my debt. My object was to get the difference, to apply on my debt. I do not think there was any custom about using the securities of the bank in that way or in any other. At the time I bought this claim of the Eliot Bank, the bank did not know that the firm of Whitcomb and Thayer owed me anything. I do not think there was any custom or practice of the directors of the bank with regard to the matter of trading in the securities which were held by that bank as collateral for claims of that bank in order to pay in whole or in part private matters of their own. I disposed of the collateral the same day I got it, within, I should think, four or five hours. The collateral note I held was due May 9 and 12, and if I had put it away in my safe, and deposited it in the bank on May 12, it would have been due and payable in the regular course of things. Instead of doing that, within four or five hours after I got it I disposed of it. I disposed of it to James O. Safford and Company. I knew they were in the habit of buying paper, and so I took it in to them and asked them if they would buy it. It was

no part of my object to make it difficult to trace the note, and I knew, if I sold the note to them, they would be *bona fide* holders of it. I do not think I had any such thought in my mind in selling that note to them, to make them an innocent third party who would hold the note. I knew the note would pass a good title to them, and that they would own the note. It was not my object in selling that note to them, to sell it to somebody who should be ignorant of the circumstances under which that note was held by the Eliot Bank and disposed of to me." The witness further testified, that he subsequently bought the note of Safford and Company, and then brought this action.

The judge ruled that there was no evidence to be submitted to the jury tending to maintain a defence; directed the jury to return a verdict for the plaintiff for $1573.54, with interest from the date of the writ; and reported the case for the determination of this court. If the ruling was correct, judgment was to be entered on the verdict. If the plaintiff was entitled to interest from January 24, 1877, or from a later date, the verdict was to be amended accordingly. If there was evidence which ought to have been submitted to the jury, a new trial was to be granted.

*R. M. Morse, Jr.*, for the defendant.

*J. D. Ball & B. L. M. Tower*, for the plaintiff.

C. ALLEN, J. There was no evidence of any agreement or understanding, to which the defendant was a party, which would limit the authority of the Eliot Bank to dispose of the note in suit, with the principal debt for which it was held as security. The only agreement with the defendant was that the note should be used at the Eliot Bank, and nowhere else. This means, that it was to be used there by Whitcomb and Thayer. If we look through the whole account given by the defendant and her son, of what took place between them at the time the note in suit was given, it is plain that the agreement between them did not, by its reasonable and natural construction, extend so far as to imply that the bank itself was to be bound not to dispose of its claim against Whitcomb and Thayer, and of the security with the claim. The stipulation of the defendant, as testified to by herself and by her son, was limited to the use which should be made of the note by himself or by his firm.

The defendant contends that the understanding between the bank and Whitcomb and Thayer was, that the bank should not dispose of this note; but this does not clearly appear, and if it did, it was an understanding to which it is not shown that she was a party.

The circumstance that the plaintiff took the note with an intention to use it in a manner not allowed by law, does not preclude him from using it in a lawful manner, for the purpose of collecting thereon an amount equal to the debt for which it was held by the bank as security. *Pemberton National Bank* v. *Porter*, 125 Mass. 333. *Atlas National Bank* v. *Savery*, 127 Mass. 75. *Proctor* v. *Whitcomb*, 134 Mass. 428.

The note representing the debt to the bank was dated January 24, 1877, and was payable on demand, with interest; but, as against the defendant, the interest should only be computed from February 10, 1877, the date when the note was actually given; it not being shown that any interest on the debt accrued before that date. The verdict will therefore be amended accordingly. *Judgment on the verdict as amended.*