## KLEIN *v*. GERMAN NATIONAL BANK.

### Opinion delivered March 9, 1901.

1. CHANGE OF VENUE—WHO ENTITLED TO.—Under Sand. & H. Dig., §§ 7379, 7382, providing that "any party to a civil action" may obtain an order for a change of venue therein, and directing that, upon a change of venue being ordered in a civil action, the papers in the case "shall be transmitted to the clerk of the court to which the venue is changed," where there were several defendants, and one of them refused to join in an application for a change of venue, the petition was properly denied. (Page 143.)

2. NOTE—ALTERATION—PRESUMPTION.—The fact that a note sued on appears on its face to have been altered raises no presumption against its validity, nor does it cast upon the plaintiff the burden of showing whether the alterations were made before or after its execution. (Page 144.)

3. BURDEN OF PROOF—WHEN NOT SHIFTED.—The introduction in evidence of an altered note sued on, without explanation of apparent alterations, on proof merely of the makers' signatures, though sufficient, in the absence of rebutting evidence, to make out the plaintiff's case, does not shift the burden of proof to the defendant. (Page 144.)

4. APPEAL—INVITED ERROR.—Appellant cannot complain of an error in instructions asked by his opponent if the same error was repeated in instructions asked by himself. (Page 145.)

5. ACCOMMODATION PAPER—DEFENCE.—Where a president of a corporation, in his official capacity, executed a note payable to himself individually, and indorsed the note to a bank, which took it in good faith, the fact that notice of the payee's lack of authority to bind the corporation by his signature appeared on the face of the note, though a good defense to the corporation, does not release accommodation makers who, with notice of such lack of authority, signed the note in order to give it currency. (Page 145.)

6. SAME—DIVERSION OF PROCEEDS.—Parties who, for the accommodation of a corporation, signed a note payable to its president are not released from liability to an indorsee because the payee of the note deposited it with the indorsee as collateral to secure a note executed by the payee to the indorsee, nor because the payee subsequently diverted the proceeds so obtained. (Page 146.)

7.  ·SAME.—Where a note executed for the accommodation of a corporation was made payable to its president, the fact that a bank advancing money on the note placed the amount to the president's credit does not show that the bank was responsible for the president's diversion of the proceeds. (Page 147.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

### STATEMENT BY THE COURT.

The German Bank brought suit on the following note:

"$15,000.00               Little Rock, Ark., May 28, 1895.

Sixty days after date, for value received, we promise to pay to the order of Ed Hogaboom fifteen thousand dollars, at the German National Bank in Little Rock, Ark., with interest at 10 per cent. per annum from maturity until paid. The makers and indorsers of this note hereby severally waive presentment for payment, notice of non-payment, and protest.

|                              | THE PARK HOTEL COMPANY,      |
|------------------------------|------------------------------|
| Attest:                      | ED HOGABOOM, President.       |
| .E. F. KLEIN, Secretary.     | ED HOGABOOM,                 |
|                              | E. F. KLEIN,                 |
| [Seal Park Hotel Co.]        | C. C. GREENWAY,              |
|                              | M. A. EISELE."               |

This note was made on a printed form for a note used by the Citizens' Bank of Little Rock, but it appeared from the face of the note that the printed words "The Citizens' Bank" were stricken out, and the name of Ed. Hogaboom inserted as payee. The printed words "at their office" were also stricken out, and the words "at the German National Bank" substituted, as the place of payment.

The complaint alleged that the note had, for a valuable consideration, been transferred and indorsed before maturity by Hogaboom to the bank.

Hogaboom filed no answer. The hotel denied that it executed the note. The defendants Klein, Greenway and Eisele alleged in their answer that they signed the note as sureties for the accommodation of the Park Hotel Company only, and for the sole purpose of enabling that company to negotiate it and use the proceeds thereof; that Hogaboom wrongfully transferred the note to the bank as collateral security for the payment of his individual note to the bank for the sum of ten thousand dollars, and that of this

the bank had notice. This answer was filed on the 10th of April, 1897. Afterwards on the 24th of March, 1898, they filed an amendment to their answer, setting up that the defendants had, for the accommodation of the Hotel Company, executed the note to the Citizens' Bank payable at the office of said bank, and that afterwards, without their knowledge or consent, the note had been altered, so as to make it payable to Ed Hogaboom at the office of the German Bank. Three of the defendants filed an application for a change of venue, which the court overruled because the Hotel Company, another defendant, refused to join in the application. There was a judgment against Hogaboom for want of an answer. The presiding judge directed a verdict in favor of the Hotel Company, on the ground that it did not authorize the execution of the note or receive the proceeds thereof. The jury found in favor of the plaintiffs against the other defendants for the sum of $8,082.50, and also found specially, in answer to an interrogatory propounded by the court, that the alterations on the note were made before the execution and delivery of the note to Hogaboom.

Judgment was rendered accordingly, and the defendants Klein, Eisele and Greenway appealed.

*Greaves & Martin, Wood & Henderson* and *Rose, Hemingway & Rose,* for appellants.

It was error to deny the motion for a change of venue. Sand. & H. Dig., § 7379; 32 Fed. 418; 35 *id.* 853; Ind. Code, § 207; 70 Ind. 157; 18 Oh. St. 497; 6 G. & J. 16; 97 Cal. 637; 32 Pac. 711; 49 S. W. 837. It was error to allow the introduction of the note until the alterations were explained. 27 Ark. 101; 1 Greenleaf, Ev. 564; 3 Rand. Comm. Pap. § 1785; 2 Dan. Neg. Inst. 1417. The bank's knowledge of the character of the paper bars recovery by it against the sureties. 31 Ark. 657; 5 Wend. 566; 1 Dan. Neg. Inst. 790; 2 Rand. Comm. Pap. § 476; 10 Wend. 170; 23 Barb. 18; 50 N. Y. 531; 4 Barb. 304; 21 Abb. N. Cas. 151; 29 Wis. 209; 2 Am. Rep. 554; 28 Ala. 606; Byles, Bills, 125; 1 Brandt, Sur. & Guar. § 115; 16 B. Mon. 201; 16 Pick. 574; Jones, Pledges, § 105; Colebrooke, Coll. Sec. § 76; 10 Wend. 316. Appellants are not estopped. 53 Ark. 196; 36 Ark. 97; 15 Ark. 55; 22 Ark. 489; 43 Ark. 21; 51 Ark. 61.

*Ratcliffe & Fletcher,* for appellee.

The motion for change of venue was properly overruled. 1 Stew. 218; 6 Wend. 508; 19 Wend. 700; 1 How. Pr. 156; 2 How.

Pr. 77; 32 Wis. 63; 40 Wis. 28; 48 Wis. 198; 54 N. W. 330; 14 Bush, 616; 120 Ind. 422; 30 S. W. 558; 62 Cal. 311; 18 Oh. St. 497; 63 Ark. 538; 1 Fed. 367. The time and circumstances of the alteration are merely facts to be considered and passed on by the jury, and can have no effect on the burden of proof. 1 Gr. Ev. § 564; 11 Conn. 531; 7 Barb. 565; 6 Ired. 161; 4 Sneed, 56. The presumption is that the changes in the printed form were made to suit the makers of the note. 2 Dan. Neg. Inst. § 1419; 32 Cal. 83, 89; 35 Ia. 507. If it had been shown that the erasures were made after the note was signed *without the consent* of the makers, then the burden would have devolved upon the appellee to explain, but not before. 75 Fed. 925; 2 Dan. Neg. Inst. § 1421; 35 Ark. 146, 154. The question was a proper one for the jury. 63 Mo. 61; 10 Mo. 349-350; 48 Ind. 460; 2 R. I. 345; 114 N. Y. 135. Appellants are estopped to deny their liability. 39 Ark. 47; 9 Mass. 1; 40 N. Y. 456; 6 Leigh, 230.; 2 Dan. Neg. Inst. § 1113; 12 L. R. A. 434; *s. c.* 26 Pac. 299; 14 Cent. L. J. 414. The lack of authority of a corporation to execute a note is no defense for a surety. 62 Ark. 388. The knowledge of the bank as to the character of the undertaking of the accommodation makers is no defense. 29 N. J. Law, 521; 42 *id.* 177; 40 Md. 561-2; 34 Ind. 251; 17 Johns. 176; 4 Cowen, 567; 5 Wend. 66; 37 Vt. 534; 33 Vt. 633; 2 Paige, 509; 1 Hill, 513; 23 Hun, 372; 59 How. Pr. 118; 2 Sandf. 115; 35 Vt. 281; 137 Mass. 303; 14 B. Mon. 351; 53 Ind. 438; 1 Duv. 13; 16 Ga. 651; 1 Dan. Neg. Inst. § 793; 69 Fed. 532; 65 Ark. 207.

RIDDICK, J., (after stating the facts). This is an action on a promissory note by the German Bank of Little Rock against the Park Hotel Company of Hot Springs and certain other parties residing there, who had joined in executing the note, and several questions are presented by the appeal.

On the question as to whether three of the defendants had the right to take a change of venue over the objection of another defend-- ant who refused to join in such application, we are of the opinion that they did not have such right. Our statute (Sand. & H. Dig. §7382) directs that, upon a change of venue being ordered in a civil action, the papers in the case "shall be transmitted to the clerk of the court to which the venue is changed," thus showing that it was not intended that one defendant to a civil action should have the right to sever his case from the others, and take a change of venue, without removing the case as to all the defendants. There

is no reason why the wishes of one defendant as to a change of venue should be given preference over others, and when defendants properly joined in an action against them differ as to the expediency of a change of venue, and some of them refuse to join in the application, it is not error for the court to overrule the application. The words in the statute "any party to a civil action" may obtain a change of venue (Sand. & H. Dig. § 7379) do not mean that any individual defendant may obtain such order; but these words refer to the defendants as a class, and include all on that side. To be entitled to the change of venue, they must all join in or favor the application, with the exception, perhaps, of mere nominal or formal defendants having no real interest in that side. *Wolcott* v. *Wolcott,* 32 Wis. 63; *Levy* v. *Marlin,* 48 *ib.* 198; *Whitaker* v. *Reynolds,* 14 *Bush* (*Ky.*), 616; *Peters* v. *Banta,* 120 Ind. 422.

The next contention is that the court erred in permitting the note to be read in evidence without first requiring the alterations apparent on its face to be explained. It is said that this threw the burden of proof upon the defendants. But we do not concur in this contention. The burden of proof is on the plaintiff to make out his case, and to do this he must, of course, show that the defendants executed the note sued on; but, when he shows that the signatures to the instrument are those of the defendants, he has the right to introduce the instrument in evidence, and, if there be no further evidence, he has made out a case sufficient to go to the jury. "The view best supported by reason, and the one to which the authorities seem tending, is that the mere fact of an interlineation or erasure appearing in an instrument does not *per se* raise any presumption either for or against the validity of the writing; and the question when, by whom, and with what intent an alteration was made is one of fact, to be submitted to the jury upon the whole evidence." 2 Am. & Eng. Enc. Law (2d. Ed.), 274; *Gist* v. *Gans,* 30 Ark. 285; *Simpson* v. *Davis,* 119 Mass. 269; *Wilson* v. *Hayes,* 40 Minn. 531, 12 Am. St. Rep. 754; *Willett* v. *Shepard,* 34 Mich. 106; *Slayner* v. *Joyce,* 120 Ind. 99.

This is in substance the rule already declared by this court. *Gist* v. *Gans, supra.*

The introduction of the note, and proof of the signatures thereto, did not shift the burden of proof, or put it upon the defendants, though, in the absence of rebutting evidence, this might have been sufficient to make out plaintiff's case. But in some of the instructions given at the request of plaintiff it seems to be assumed that

the burden was on the defendants to show that the alterations were made after the execution of the note, yet the same thing can be said of those given on the request of the defendants. The presiding judge did not tell the jury, and was not asked to tell them, directly upon whom the burden of proof rested, but stated that it was for them to determine from all the evidence, including the appearance of the note, whether or not the same was altered after its execution by defendants." It is not contended that the judge committed any error in giving instructions on this point, but if he did it was error invited by the defendants as well as the plaintiff, and of which they have no right to complain. *Standard Life Co.* v. *Schmaltz,* 66 Ark. 588; Elliott, Appellate Pro. § 626.

It is next said that Hogaboom had no authority to execute the note for the Hotel Company, and that, as it was made payable to his own order, this was notice to every one of his want of authority. Quoting the language of Lord Denman, counsel say the note "bears its death wound on its face." It must be conceded that, as Hogaboom had no authority to execute notes for the Hotel Company, the bank was not in the position of an innocent purchaser. But the evidence, we think, clearly shows that it acted in good faith, and took the note relying on the statements of Hogaboom that he did have authority, and trusting also to the signatures of the other defendants to the note, two of whom were officers in the Hotel Company; one being secretary, and the other director. The Hotel Company, it is true, was not bound by the statements of Hogaboom, nor by the fact that the other defendants had signed the note; and the circuit judge therefore properly directed a verdict in its favor, but this did not release the sureties. There was nothing in the character of this contract forbidden by law. The Hotel Company could have executed such a note, had it chosen to do so, and the mere fact that the party assuming to act for it had no authority does not release the sureties. These sureties had the same notice of the want of authority on the part of Hogaboom that the banks had. Indeed, their opportunities for knowing the extent of Hogaboom's authority were much superior to those of the bank. As before stated, one was secretary, another a director, of the Hotel Company, and all of them lived in the city where the company and its hotel were located. When they executed the note to Hogaboom, and made it payable in Little Rock, the purpose was to enable him to obtain money on it, and they must have known that any

party to lending money on it had the right, as against them, to rely. upon their signatures, and believe that the note was valid.    The very object they had in view in signing the note was to give it currency, and, when that purpose has been carried out, and the money obtained, they cannot escape liability by showing that what they in effect represented to be true was not true.    Defendants say that they relied upon the statements of Hogaboom that he had authority to execute the note for the Hotel Company.  If so, they can look to Hogaboom.  But the bank relied not only on the statements of Hogaboom, but upon the signatures defendants placed on the note expressly to give  it value, and it has the right to hold not only Hogaboom but defendants liable for money loaned on their faith and credit.    *Maledon* v. *Leflore*, 62 Ark. 388; 2 Daniel, Neg. Inst. § 1306 *a*; 2 Randolph, Com. Paper, § 915.

Again, it is said that the bank knew that the note was executed for the accommodation of the Hotel Company, and yet permitted Hogaboom to divert it from its proper purpose.  But, though the bank knew that the money was wanted for the Hotel Company, the money was payable to Hogaboom individually.  The note on its face shows that the intention of the makers was that the money should be paid to him.  While the bank refused to loan the full amount of the note, it offered to loan ten thousand dollars for the benefit of the Hotel Company.  Hogaboom, assuming to act for the company, accepted the offer, gave his own note for the amount, and transferred the note sued on as collateral security to the bank. As this note was made payable to Hogaboom, and delivered to him to negotiate and raise money upon, we are of the opinion it was immaterial whether he obtained the money by a sale of the note or a deposit of the same as collateral.  In either case there was no diversion of the note, for he obtained the money for the benefit of the Hotel Company, and accomplished the purpose for which the note was executed.  The bank had no notice of his intention to divert the funds to a wrongful purpose, and was not responsible for such misappropriation.  The defendants, having trusted Hogaboom with a note payable to his own order, upon which to raise money, must, as we said in a recent case, be held to have trusted him to make a proper application of the proceeds.    *Evans* v. *Speer Hardware Co.*, 65 Ark. 213; *Duncan* v. *Gilbert*, 29 N. J. Law, 521; *Jackson* v. *First National Bank*, 42 N. J. Law, 177; *Maitland* v. *Citizens' Bank*, 40 Md. 561; *Proctor* v. *Whitcomb*, 137 Mass. 303.

Nor is it a matter of any moment that, instead of paying Hogaboom money in hand, the bank, at his request, gave him credit for it on the books of the bank. This was, in effect, the same thing as a payment. He at that time owed the bank nothing. It was understood that the money was to be used at once, and it was drawn out, nine thousand of it on the same day, and the remainder two days afterwards.

There are other points raised, but we deem it unnecessary to discuss them. The evidence as to the alteration of the note was conflicting, but it was sufficient to sustain the finding of the jury. The conduct of the defendants themselves seems rather inconsistent with their own contention on this point. Although they say that this note was executed to the Citizens' Bank, yet, when it was presented for payment by the German Bank, they expressed no surprise, and gave no intimation to the bank that it had been altered.

It was about a year and a half afterwards, and a year after suit had been brought, and nearly a year after the filing of their original answer, before by an amendment thereto the defendants first notified plaintiff of their contention that the note had been altered. For this reason, it is not strange that the jury felt disinclined to credit their statements on that point. While it seems to us that the preponderance of evidence on this question of alteration was in favor of the defendant, still we are clearly of the opinion that, under the circumstances in proof, it was a question for the jury, and their finding must stand.

This case has been well argued by able counsel, but the sum of it is that these defendants were induced by the president of a Hotel Company to become sureties on a note which he claimed to have power to execute for the company. The company, when sued on the note, successfully disputed his authority, and he proved to be insolvent, and they are now bound for the payment of the note. It may be a hardship, but, as between them and the bank, from whom the money was obtained on their note, it seems to us that the bank has the best of the argument. On the whole case, we think that the judgment was right, and it is therefore affirmed.