SAMUEL MARDER *vs.* MOOSE HILL SPRING TONIC CO. & others.

Essex.    January 2, 1934. — March 28, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & FIELD, JJ.

*Pledge.    Conversion.*

In a suit in equity, the following facts appeared: The parties made an agreement to form a corporation having one hundred twenty-five shares of stock, to which the defendant should convey a business which he owned and then was conducting; that each party should have a fifty per cent stock interest in the corporation and that the plaintiff should pay the defendant a certain amount of cash and the "balance out of 80% profits, balance within three years." The organization was thus carried out. The plaintiff indorsed the certificate which he received and delivered it to the defendant as security for his promissory note for such balance, payable to the defendant as stated in their agreement in writing. After the organization, no stockholders' and no directors' meetings were held. Although there were profits, there was no accounting as to them. No dividend was de-

clared, although at one time there was a distribution of profits from which a payment was made to the defendant on the plaintiff's note. After the note became due, the defendant demanded payment, and, the plaintiff proving to be an unsatisfactory employee and business associate, the defendant sent him a letter stating that his services were no longer required. The plaintiff thereafter ceased to work for the corporation or to take any part in its affairs. The defendant acted on the assumption that, after the plaintiff had been discharged, his interest in the corporation had terminated, and the defendant considered himself the owner of the stock of the plaintiff, exercised complete control of it and treated the plaintiff as no longer connected with the corporation. No notice of intention to sell the pledged stock had been given by the defendant and there had been no sale. The plaintiff had made no tender nor offer to pay the note. The suit was to enjoin the defendant from transferring the stock and to require the defendant to pay the plaintiff the value of the stock less the amount due the defendant from the plaintiff. The plaintiff contended that the defendant had converted the pledged stock. A final decree establishing the amount due to the defendant on the note, adjudging that the defendant was holding the plaintiff's stock as collateral security for that amount, and otherwise dismissing the bill was entered. The plaintiff appealed. *Held*, that

(1) There had been no conversion of the pledged stock;
(2) The decree was proper.

BILL IN EQUITY, filed in the Superior Court on December 31, 1929, and afterwards amended, described in the opinion.

The suit was referred to a master. Material facts found by him are stated in the opinion. No objections to his report were filed by either party.

The suit was heard upon the master's report by *Gray*, J., by whose order the final decree described in the opinion was entered. The plaintiff appealed from the final decree only.

*E. C. Jacobs*, for the plaintiff.

*W. E. Sisk*, for the defendants.

CROSBY, J. This is a bill in equity by which the plaintiff seeks to restrain the defendant Winer from transferring sixty-two shares of stock, issued by the defendant corporation to the plaintiff and pledged by him to the defendant Winer, and prays that the latter be ordered to pay the plaintiff the value of the stock less such sum as may be due Winer on a promissory note held by him, and given to him by the plaintiff.

The case was referred to a master to determine the value of the sixty-two shares of capital stock on the basis of what the inventory of the corporation disclosed on December 2, 1929; and also for the purpose of determining the market value of the stock on that date, if it had a market value, and, if not, the fair value thereof on said date, if the market value and the fair value differ from the value as shown by the inventory. The master found that the stock at no time had a market value. He stated that he construed the words of the decree of reference to him, "value of said sixty-two shares of capital stock on the basis of what the inventory . . . discloses," as referring to the book value. He found that on December 2, 1929, the book value of the one hundred twenty-five shares of common stock issued, as shown by the inventory, was $17,923.67, and that the book value of the sixty-two shares owned by the plaintiff on that basis was $8,540.50. The fair value of all the capital stock was found to be $12,500 and that of sixty-two shares was $6,200. After the master filed his report containing the above findings, the case was again referred to the same master to hear the parties "on all issues raised by the pleadings not already passed upon by him." In his second report he adopted and affirmed in substance the findings made in the first report. He further found as follows: Winer acquired the business and personal property of the Moose Hill Spring Tonic Co. on February 9, 1926. In the fall of 1926 the plaintiff and Winer had negotiations relative to going into business together, as a result of which a written agreement was executed by them on November 29, 1926, wherein, among other things, it was agreed that a corporation would be formed known as the Moose Hill Spring Tonic Co. to take over the business of that company. They were to agree on the value of the assets of the company and to issue stock for the same, each party to have a fifty per cent interest in the corporation. The plaintiff was to pay for his stock "$2,000 in cash and [the] balance out of 80% profits, balance within three years. . . . Parties to draw equal salary," and Marder was to be president and Winer

treasurer. In carrying out the agreement they took an inventory of the business and agreed that the capital should be $12,500, that one hundred twenty-five shares should be issued to Winer, and that he would sell sixty-two shares to Marder for $6,200 payable as stated above, and that in addition to the cash payment Marder should give Winer his note for the balance to be paid, secured by his stock as collateral. The plaintiff paid $1,800 in cash and the agreement was modified to that effect. Thereafter the corporation was organized. Winer conveyed the assets of the business to the corporation, and sixty-two shares of stock were issued to Winer, sixty-two shares to Marder, and one share was issued to Charles J. Goldman. Marder gave Winer his promissory note for $4,400, which was due November 30, 1929. It did not provide for the payment of interest, but specified on its face that it was "secured by stock certificate No. 1 of the Moose Hill Spring Tonic Company," and recited that it was "payable as agreed." It was agreed by the parties that the words "payable as agreed" had reference to the written agreement herein above referred to which recited "balance out of 80% profits, balance within three years." The note was given pursuant to that understanding. Marder was elected president, and Winer treasurer; they, with Goldman, constituted the board of directors. No other stockholders' or directors' meetings were held. Marder and Winer worked for the corporation with equal salaries. No accounting of profits was ever taken by either of them. There was no declaration of dividends or profits at any time. On February 5, 1929, by agreement between Marder and Winer, $1,000 was taken out of the corporation and charged to surplus and one half of that amount was paid to each of them. It was also agreed that instead of applying eighty per cent of the $500 received by Marder on the note, Winer accepted sixty-six and two thirds per cent, so that the sum of $333.33 was received by Winer and credited on the note of Marder and $166.66 was received by the latter for his own use. The corporation operated at a profit.

The defendants contended that it was agreed that eighty

per cent of the plaintiff's profits should be applied to the note only when declared but the master did not so find. Marder was an unsatisfactory employee and business associate. His methods were careless and there were frequent shortages in his accounts. Although the plaintiff had a right to examine the books, there was no evidence that he ever did so. He did not know what the profits of the business were, and made no attempt to determine them. In November, 1929, Winer deposited the note in a bank for collection, and the bank sent the plaintiff notice that it held the note and requested its payment. The amount demanded was $4,066.67 which was the face of the note less $333.33. No interest was demanded. The plaintiff contended that Winer agreed to the taking of an inventory, and that it be determined what was due on the note, and that if there were any profits above the amount of the note it was to be paid, or that Winer would take the plaintiff's stock in payment, or that he would extend the note. The defendant Winer denied that any such agreement was made and contends that he told the plaintiff the note was due and that he wanted it paid. The master found that the conversation did not amount to a contract and that there was no agreement for the renewal or extension of the note, the taking of an inventory, or the paying of the plaintiff. On December 2, 1929, the bank sent to the plaintiff a notice demanding payment and a protest of the note. On December 5, 1929, Winer sent the plaintiff a letter stating that his services were no longer required. A check for $52.53 and statement of account for salary were enclosed. Thereafter the plaintiff ceased to work for the corporation or take any part in its affairs. He contends that Winer converted the plaintiff's sixty-two shares of stock to his own use, and that the acts of the defendants are evidence of such conversion. Winer as pledgee of the stock had possession of the certificate which was indorsed by the plaintiff. No notice of intention to sell the stock was given by Winer to the plaintiff, nor was there any sale by Winer.

On motion for the confirmation of the master's report, the trial judge reversed the findings of the master as to the

amount due on the note, and the finding that the plaintiff was excused from making a tender of amount due on the note by reason of the defendant's refusal to account; in all other respects the report was confirmed and a final decree was entered adjudging there was due the defendant Winer on the note to September 20, 1933, including interest "the sum of $4955.29 and that the defendant Joseph Weiner holds the stock of the plaintiff as collateral security for the said amount due on said note; that the other prayers of the plaintiff are hereby denied and said bill dismissed with costs . . ." and that execution issue therefor.

It is plain upon the facts found that there was no conversion of the stock by the defendant Winer. It was found that he had possession of the stock as pledgee, and, although the plaintiff was discharged as an employee of the corporation, he was at that time the president of the corporation; that at that time Winer had possession of the stock as collateral security for the note, and that no corporate action was taken upon the discharge of the plaintiff. The findings that the defendant Winer acted on the assumption that after the plaintiff had been discharged his interest in the corporation had terminated, and that Winer considered himself the owner of the stock of the plaintiff, exercised complete control of it and treated the plaintiff as no longer connected with the corporation, and the other findings fail to show that the stock has been converted by Winer. Whatever he may have thought concerning his rights in the stock, he did nothing to indicate that he had converted it to his own use or affected the rights of the plaintiff therein. Winer still holds the stock as pledgee. It still belongs to the plaintiff, subject to the claim of Winer as security for the balance due on the note. The master finds that the plaintiff has made no tender or offer to pay the note. If he had no right to the immediate possession of the stock he cannot maintain an action for its conversion. One who has a right of property in chattels, but who has no right to the immediate possession thereof, cannot maintain an action for conversion. *Raymond Syndicate* v. *Guttentag*, 177 Mass. 562, and cases cited. *Crehan* v.

*Megargel,* 235 Mass. 279.   *Lincoln Park Garage* v. *Devonshire Financial Service Corp.* 277 Mass. 303.   *Hyland* v. *Hyland,* 278 Mass. 112, 115.

Before the plaintiff can maintain any proceeding to recover possession of the stock it is his duty to ascertain the amount due on the note.   It does not appear that he has ever made any attempt to determine such amount.   It is found that no declaration of profits or dividends has ever been taken by either of the parties.   Although art. 10 of the by-laws provides for the submission to arbitration in accordance with St. 1925, c. 294, neither party has complied with this article, or signified a desire to do so.

It is plain from the entire findings of the master and the reasonable inferences to be drawn therefrom that the findings as to the amount due on the note, and that the plaintiff was excused from making a tender or payment by reason of the defendant's refusal to account were erroneous.   These findings were properly reversed by the interlocutory decree entered on the master's report; in other respects the master's report was rightly confirmed.   The final decree which recites that there is due the defendant Winer on the note to September 20, 1933, including interest, the sum of $4,955.29; that the defendant Winer holds the stock of the plaintiff as collateral security for the amount due on the note; that the other prayers are denied; that the bill be dismissed with costs taxed at $20.60, and that execution issue therefor fails to show any error.   It is to be affirmed with costs of the appeal.

*Ordered accordingly.*