LAWRENCE E. ANDERSON, administrator with the will annexed, *vs.* HOME NATIONAL BANK OF BROCKTON.

Plymouth.    November 16, 1934. — February 27, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Bills and Notes*, Note as payment. *Payment. Pledge. Assignment. Conversion. Agency*, Scope of authority, Termination.

An owner of shares of stock pledged them to a bank as security "for the payment of any note, notes or other obligation of" a certain corporation, and also gave the bank a power of attorney under seal, "irrevocably," to sell, assign and transfer the shares. Later he died, and thereafter his successor in title to the shares refused to sign a new pledge agreement and requested the bank to enforce payment of sundry notes by which the corporation's then indebtedness to it was evidenced. The bank nevertheless renewed the notes. Several years later the bank accepted one note for the aggregate amount of the corporation's notes then held by the bank. On each occasion the old notes were marked as cancelled and paid and were returned to the corporation. The last note bore indorsements, as none of the others had. Without the consent of the then owner of the shares, the bank made an assignment of the last note and of the shares. Thereafter the owner made demand upon the bank for the shares. No tender of the amount due from the corporation to the bank ever was made to the bank. Such amount at all times was substantially greater than the value of the shares. In an action against the bank by the owner of the shares for conversion of them, it was *held*, that

(1) In the circumstances, a conclusion was warranted that the last note was not given and received in payment of the previous indebtedness of the corporation;

(2) The assignment by the defendant of the shares with the last note did not disclose an intent to evade any rights of the owner of the shares, but rather an intent to make the assignment subject to his rights;

(3) Moreover, the power of attorney given to the defendant by the original owner of the shares was not terminated by his death, and was a sufficient authorization for the assignment of the shares;

(4) There was no legal obstacle to the assignment;

(5) Even if the assignment of the shares were a conversion in that the defendant thereby rendered itself unable to return the shares upon tender of the amount of the corporation's indebtedness to it, and that therefore no such tender was necessary as a condition precedent to the plaintiff's right of action, nevertheless the plaintiff was

not entitled to recover in view of the fact that the corporation's indebtedness at all times was greater than the value of the shares;

(6) The action could not be maintained.

TORT for conversion of seven shares of stock of Brockton Co-operative Boot and Shoe Company formerly owned by Swante Anderson. Writ dated February 4, 1931.

In the Superior Court, the action was referred to an auditor, whose findings of fact were to be final. Besides the facts stated in the opinion, he found the following:

At the time of Swante Anderson's death on February 23, 1925, the corporation Anderson and Nelson Company owed the defendant $25,000 on seven short term notes in various amounts which were to fall due at intervals between February 27, 1925, and June 20, 1925. They were all renewed at maturity. In March, 1927, the corporation owed the defendant a total of $25,000 on six short term notes which were to fall due at intervals between April 20, 1927, and June 21, 1927. At the maturity of each of five of such notes, a new note for the same amount was issued and the old note was marked as cancelled and paid and was returned by the defendant to the corporation. The sixth note was paid at maturity, but a new note for the same amount was given two days later. From that time until January 16, 1930, "short term loans were granted the same as in the past, old notes being cancelled and marked paid and new notes issued."

On January 14, 1930, the corporation owed the defendant $26,000 on seven short term notes, falling due at times between January 17, 1930, and February 11, 1930. Under date of January 17, 1930, the corporation made a new collateral security note to the defendant for $26,000, payable in one month, specifying thirty-five shares of stock of Brockton Co-operative Boot and Shoe Company as collateral and indorsed by Andrew E. Nelson and Patrick Nelson, former associates of Swante Anderson. None of the previous notes were so indorsed. The defendant then cancelled and marked as paid the seven notes then outstanding and returned them to Anderson and Nelson Company. On January 17, 1930, the Brockton Co-operative Boot and Shoe Company by an

assignment "took over the note [of that date] and security from the" defendant, paying it $26,000. The executrix of the will of Swante Anderson refused her assent "to the assignment of the note and stock."

On September 16, 1930, the executrix transferred to herself as an individual the seven shares in question, and notified the Brockton Co-operative Boot and Shoe Company. On September 17, 1930, she made demand for the seven shares on that company and on the defendant. She died in October, 1930, and the plaintiff was appointed administrator with the will annexed of her estate. He repeated the demand on December 17, 1930.

"No demand was ever made on Anderson and Nelson Company by any representative of Swante Anderson's estate for the payment of any note or notes held by the" defendant, and "no tender of payment was ever made to the" defendant "covering the Anderson and Nelson Company's loan or any part of it by any one representing the estate of Swante Anderson." From October 27, 1915, to January 17, 1930, the shares originally pledged to the defendant were continuously kept by it.

The financial condition of the Brockton Co-operative Boot and Shoe Company grew considerably worse beginning in 1926. It became bankrupt in August, 1932. The seven shares in question were worth $6,300 in 1927 and $5,250 in 1930.

Each party moved for judgment upon the auditor's report. The motions were heard by *Goldberg*, J., who "found" for the defendant. The plaintiff alleged exceptions.

The case was submitted on briefs.

*S. B. McLeod & O. V. Fortier*, for the plaintiff.

*E. J. Campbell*, for the defendant.

PIERCE, J. This is an action of tort for the conversion of seven shares of stock of the Brockton Co-operative Boot and Shoe Company. The answer is a general denial and a plea that the stock was pledged by the original owner thereof as collateral security for the payment of obligations owed by a firm of which the original owner was a member.

The case was referred to an auditor whose findings of

fact are final by stipulation of the parties.  His report discloses the following material facts: On October 27, 1915, the firm of Anderson and Nelson Company obtained from the defendant bank a loan of $8,000.  In connection with this loan the individual members of the firm, including Swante Anderson, from whom the plaintiff in this action traces title, signed a pledge agreement covering among other stock the seven shares now in controversy, as collateral security for a note for $8,000 "or any renewal or renewals of said note."  At the same time Swante Anderson signed and delivered under his seal "at least two assignments and powers of attorney in blank" conferring "irrevocably" the right to use, sell, assign and transfer all or any part of the pledged stock.

On November 10, 1922, a new pledge agreement was signed by the original pledgors, including Swante Anderson, substantially the same as the first, except that this one read "for the payment of any note, notes, or other obligation of Anderson & Nelson now due, or which may hereafter be due to the Home National Bank of Brockton."  At this time the firm owed the defendant $25,000.  On April 25, 1924, a few months subsequent to the incorporation of Anderson and Nelson Company on November 27, 1923, Swante Anderson, who was then a stockholder in the corporation, signed a similar agreement in which the only change was the substitution of the corporate for the firm name.  At this time $22,000 was owed to the defendant.

On February 23, 1925, Swante Anderson died leaving his widow as his executrix and sole beneficiary under his will.  On July 30, 1925, the widow refused to sign a new pledge agreement, despite which refusal notes then maturing were renewed by the defendant.  On March 19, 1927, one McLeod, acting as attorney for the widow, informed the vice-president of the defendant that she would sign no more notes or pledge agreements and requested that the defendant take up the obligations owed by Anderson and Nelson Company which then had assets sufficient, if pressed, to pay its obligations to the bank, amounting to $25,000.  From this time until January 16, 1930, the obligations of the corporation con-

tinued to be about $25,000. Shortly after March 31, 1927, two new shares of stock, without the knowledge of the widow, were added by the corporation to the collateral already held by the defendant.

The contention of the plaintiff, not very clearly expressed, that the note dated January 17, 1930, for $26,000, is to be considered as a payment of the several notes issued by the corporation and firm to the defendant before that date, because the last note "covered all notes which were outstanding as of that day," and "all these other notes [were returned] to Anderson and Nelson Company cancelled and marked paid, thus creating one note as the new obligation," raises the question whether this last note could have been intended by the parties as given and received in payment of, rather than as an extension of, the original obligation, in view of the indisputable fact that the security was given to cover the original obligation and any extension thereof. Whether a note is given and received in payment of an existing obligation or note, or is given and received in renewal or extension of an existing obligation or note, is a question of fact, in the absence of agreement of the parties to that end. *Kendall* v. *Equitable Life Assurance Society*, 171 Mass. 568, 573. *Stebbins* v. *North Adams Trust Co.* 243 Mass. 69, 73. "It is a question of intention, and the intention to discharge the old note is presumed when a different intention is not shown by evidence or inferred from circumstances. When it appears that it will be for the benefit of the creditor that the old debt should be kept alive, the presumption does not arise, and the debt is not discharged. Accepting a negotiable note for a secured debt will not discharge the debt, because it will not be presumed that the creditor intended to give up his security." *Cotton* v. *Atlas National Bank*, 145 Mass. 43, 45. *Rosenberg* v. *Robbins*, 289 Mass. 402, 410, 411. The same result follows in the case at bar. The defendant expressly disclaims any contention that it received greater rights against the collateral in suit than it had before the new note was taken. *Cotton* v. *Atlas National Bank*, 145 Mass. 43, 45, 48.

The plaintiff contends that the making of the note of

January 17, 1930, and the assignment of it with the stock as security therefor, without the knowledge or consent of the plaintiff's testatrix, were in themselves a conversion and discharged the pledge, citing *Maglione* v. *Penta,* 266 Mass. 413. But in the case at bar there was no sale of the collateral stock independently of the obligation which it secured. Had there been such a separate sale there might have been a conversion. *Norcross* v. *Pease,* 5 Allen, 331, 333. *Fay* v. *Gray,* 124 Mass. 500, 502. G. L. (Ter. Ed.) c. 266, § 85. The transfer of the security was in connection with an assignment of the debt or obligation which the previous notes evidenced, and was under circumstances that disclose no intent to evade any rights of the pledgors but rather an intent to transfer the pledged stock subject to such rights. There is no legal obstacle to such an assignment. *Proctor* v. *Whitcomb,* 137 Mass. 303, 308. *Eddy* v. *Fogg,* 192 Mass. 543, 546. Moreover, the power of attorney given to the defendant by the original pledgor is a sufficient authorization to allow the defendant to transfer the collateral under the provision which authorizes the defendant pledgee to "use, to sell, assign, transfer, and make over, all or any part of the said stock." This power of attorney was not determined by the death of Swante Anderson. *Cotton* v. *Atlas National Bank,* 145 Mass. 43.

It is to be noted that neither the plaintiff nor any of his predecessors in title to the pledged stock ever tendered the whole or any part of the obligations which the stock secured. Hence, even if the defendant transferred or assigned the stock, the plaintiff suffered no legal wrong unless the defendant put it out of its power to return the stock on tender of the obligation which it secured, or at least upon an offer to pay the principal obligation, such an offer being necessary as a condition precedent to the maintenance of an action for conversion. *Whitman* v. *Boston Terminal Refrigerating Co.* 233 Mass. 386, 391, and cases cited. *Marder* v. *Moose Hill Spring Tonic Co.* 286 Mass. 126, 131.

If it be assumed that the assignment of the stock with the assignment of the note was a conversion, for the reason that

it put it out of the power of the defendant to return the stock so that no tender by the plaintiff was necessary, the plaintiff would be entitled only to the value of the security less the amount of the principal obligation. *Whitman* v. *Boston Terminal Refrigerating Co.* 233 Mass. 386, 391. It follows that, since the amount of the principal obligation owed to the defendant has at all times been much greater than the value of the stock when the widow refused to join in the re-pledge of the corporation securities, as it was also when the new note was assigned on January 17, 1930, the plaintiff is not entitled to recover.

Upon all the facts found a majority of the court is of opinion that there was no error in finding [ordering judgment] for the defendant.

*Exceptions overruled.*