SOMERVILLE NATIONAL BANK *vs.* HENRY HORNBLOWER & others.

HENRY HORNBLOWER & others *vs.* THOMAS J. McCARTHY & another.

Suffolk. January 6, 1936. — January 31, 1936.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Equity Jurisdiction,* Equitable replevin, Retention for the assessment of damages. *Equity Pleading and Practice,* Stipulation. *Agency,* Knowledge of agent. *Bailment. Conversion. Damages,* For tort.

In a suit under G. L. (Ter. Ed.) c. 214, § 3 (1), for equitable replevin of a certificate of stock which the defendant had sold before the filing of the bill, the defendant's stipulation not to sell that certificate, and his holding another for an equal amount of the same stock did not enable the court to grant the equitable relief sought by the bill.

In a suit for equitable replevin of a certificate of stock believed by the plaintiff to be in the possession of the defendant, it appearing that the defendant had sold the stock before the filing of the bill, the court, though unable to grant equitable relief, properly retained the suit for assessment of damages for conversion.

A broker was bound by his clerk's knowledge that a certificate of stock had been received on condition to remit a certain amount to the delivering party.

One appropriating without right a certificate of stock of another converts it though he has in his possession and available for the owner another certificate for an equal amount of the same stock.

After delivery by mistake to a broker of a certificate of stock intended to be delivered to another and the broker's receipt of it on condition to remit a certain amount to the delivering party, the broker's transfer of the certificate to himself and his refusal to pay such amount were a conversion of the certificate and the shares represented thereby, for which damages properly were assessed at the value of the shares on the day of the wrongful transfer; the delivering party's negligence in making the wrong delivery was not a defence.

TWO BILLS IN EQUITY, filed in the Superior Court on November 29, 1929, and June 27, 1931, respectively.

The suits were heard by *Weed,* J., pursuant to whose order for decrees, final decrees were entered by *Beaudreau,* J. The defendants appealed in the first suit, and the plaintiffs and the defendant McCarthy appealed in the second suit.

*L. Withington,* (*E. O. Proctor* with him,) for Hornblower and others.

*K. A. Sanderson,* (*W. A. Redding* with him,) for Somerville National Bank.

*G. I. Kellaher,* (*E. P. Kelleher* with him,) for McCarthy.

LUMMUS, J.   The defendants in the first case are stockbrokers doing business under the name of Hornblower and Weeks.   Thomas J. McCarthy bought and sold securities through them on margin.   He had borrowed money from the plaintiff bank, depositing securities as collateral.   On October 24, 1929, during the panic in the stock market, McCarthy directed Hornblower and Weeks to sell two hundred Niagara Hudson Power warrants, which were held by the plaintiff bank as collateral, and they sold them for $1,109.60.   McCarthy requested the plaintiff bank by let-. ter to deliver these warrants to Hornblower and Weeks and to receive a check for $1,109.60 in reduction of its loan.   On the same day, October 24, 1929, McCarthy directed another stockbroker called Bowen to sell certain shares of stock which were held by the plaintiff bank as collateral, and Bowen sold them for prices aggregating $11,968.83.   McCarthy requested the plaintiff bank by letter to deliver the certificates for these shares to Bowen and to receive a check for $11,968.83 in reduction of its loan.

These two letters from McCarthy were received by the plaintiff bank on the morning of October 25, 1929.   A clerk in its employ confused the deliveries requested.   The warrants, which should have gone to Hornblower and Weeks, were delivered by messenger to Bowen, without the receipt of any check.   Ultimately they were transmitted by Bowen to Hornblower and Weeks, who on November 6, 1929, sent the plaintiff bank a check for $1,109.60.   The certificates of stock, which should have gone to Bowen, were presented on October 25, 1929, to the clerk at the stock window of Hornblower and Weeks, and were taken back to the plaintiff bank when the clerk said that he had no check for them.   Even then, though the mistake was discovered, the instructions to the messenger were not corrected.   The following Monday, October 28, 1929, the messenger presented

the certificates again at the stock window of Hornblower and Weeks, and told the clerk in charge that he, the messenger, was to receive a check for $11,968.83 for them. The clerk looked at his checks, and said that he found no such check, but that he would take the certificates on receipt and send a check by mail. The messenger left the certificates, taking a receipt reciting that they were "received of Somerville National Bank a/c Thos. J. McCarthy." No check was ever sent.

The employees of Hornblower and Weeks were working under great pressure on that day. The clerk at the stock window noted on his record merely that the certificates had been received for the account of McCarthy. They were credited on his margin account, and were put in course of transfer, according to custom, into the name of Hornblower and Weeks. The new certificates received were indorsed by Hornblower and Weeks and used as "street" certificates. As such they passed to other persons before November 16, 1929. On November 1, 1929, the error in delivery having been discovered, the messenger of the plaintiff bank went to the stock window of Hornblower and Weeks and asked a return of the certificates as having been delivered by mistake. After some discussion, he was told on November 4, 1929, that Hornblower and Weeks intended to hold them as security for McCarthy's margin account.

The plaintiff bank, on November 29, 1929, brought the bill in the first case for the return of the securities delivered by mistake to Hornblower and Weeks. There was no demurrer. Nothing in the answer suggested as a defence that the certificates were not "so secreted or withheld that they cannot be replevied." G. L. (Ter. Ed.) c. 214, § 3 (1). The answer declared merely that if the plaintiff bank "has stated any cause of action, such cause is one for damages at law." See *Labagnara* v. *Kane Furniture Co.* 289 Mass. 52, 56. Replevin, or equitable replevin, may be maintained for a certificate of stock. *Bellows Falls Power Co.* v. *Commonwealth*, 222 Mass. 51, 58. See also G. L. (Ter. Ed.) c. 155, § 33, which is not shown to be applicable to

this case. *Casto* v. *Wrenn*, 255 Mass. 72, 75. Neither did the answer suggest, what was the fact, that the certificates and the shares represented by them had been transferred before the bill was brought, so that specific redelivery was impossible. On the contrary, on December 6, 1929, Hornblower and Weeks stipulated by counsel that they would not, without order of court or assent of the plaintiff, "sell, assign, transfer, dispose of or put out of their possession the shares of stock forming the subject matter of this bill in equity." The plaintiff bank, in taking this stipulation, was ignorant that the shares had already been transferred. Although Hornblower and Weeks, at all times on and after October 28, 1929, had in their possession enough shares of the kinds delivered to them by the plaintiff bank to restore the shares so delivered, it was not until about November 12, 1931, that they collected certificates for the kinds and amounts of shares so delivered, and segregated them to await the outcome of this case. When the plaintiff bank learned all the facts, it sought on January 8, 1935, and later at the trial, to amend its bill into an action at law for conversion, but its motions were denied.

The equitable relief prayed for could not be given, for when the bill was filed not only the certificates delivered to Hornblower and Weeks but also title to the shares represented thereby had passed beyond their control. Any equitable obligation with respect to those certificates and shares did not attach to other certificates and shares which they happened from time to time to have "on hand or in their control." *Parsons* v. *Martin*, 11 Gray, 111, 117. *Lamb Knit-Goods Co.* v. *Lamb*, 119 Mich. 568, 570. It is true that, following not so much the analogy of a fiduciary depositing trust money in his own bank account (*Worcester Bank & Trust Co.* v. *Nordblom*, 285 Mass. 22, 26) as the analogy of grain of various persons in a grain elevator (G. L. [Ter. Ed.] c. 105, § 29; c. 106, § 8 [2]; Williston, Sales [2d ed.] § 154; compare *Peoples National Bank* v. *Mulholland*, 228 Mass. 152), a customer whose stock has been in the hands of a broker as security for a margin account or otherwise, may claim as his any such stock

found among the assets when the broker becomes bankrupt. *Duel* v. *Hollins*, 241 U. S. 523, reversing *In re Hollins*, 219 Fed. Rep. 544, and affirming *In re H. B. Hollins & Co.* 212 Fed. Rep. 317. *Sexton* v. *American Trust Co.* 45 Fed. Rep. (2d) 372. *Lavien* v. *Norman*, 55 Fed. Rep. (2d) 91. *Denton* v. *Gurnett & Co.* 69 Fed. Rep. (2d) 750. *In re Curtis & Sanger*, 7 Fed. Sup. 738. Compare *Stuart* v. *Sargent*, 283 Mass. 536. These cases do not hold that the owner of stock appropriated by another is required to accept in substitution other stock which may be on hand. *Parsons* v. *Martin*, 11 Gray, 111, 117. *Perkins* v. *Perkins*, 134 Mass. 441, 444. They merely give, by a fiction, an extraordinary right of reclamation. The contention made by Hornblower and Weeks that "it was inequitable to award money damages to the bank when equitable relief was possible, and when the bank had had the benefit of a restraining order and stipulation and had thereby prevented the brokers from selling the shares," will not stand analysis. Equitable relief was not possible, except on the false assumption that the right of the plaintiff bank to a return of the very certificates and shares delivered could be transferred against its will to any other shares on hand, without specific contemporaneous appropriation. The plaintiff bank had no benefit from the stipulation, for no shares were held under it. The stipulation did not prevent a sale of the shares supposed to be covered by it, for they had been sold long before the stipulation was filed. The retention of the shares, relied on for a long time by the plaintiff bank, was illusory. Hornblower and Weeks cannot insist that the case be treated as though such retention were real.

The inability of the court to give the specific equitable relief prayed for, does not prevent an award of damages instead. A plaintiff who, on the facts known to him, had a case for equitable relief, which however had already become impossible when the bill was filed because of some occurrence of which he was excusably ignorant, may have the bill retained for an award of damages. *Milkman* v. *Ordway*, 106 Mass. 232, 253 *et seq.* *Stewart* v. *Joyce*, 201 Mass. 301, 311. *Rosen* v. *Mayer*, 224 Mass. 494, 495.

*Buckley* v. *Meer*, 251 Mass. 23, 26. *Geguzis* v. *Brockton Standard Shoe Co.* 291 Mass. 368, 371. Indeed, the court has gone farther in awarding damages to a plaintiff bringing a bill in good faith, when equitable relief is impossible. *Reynolds* v. *Grow*, 265 Mass. 578, 580. *Booras* v. *Logan*, 266 Mass. 172, 175. *Degnan* v. *Maryland Casualty Co.* 271 Mass. 427, 430, 431. *Peerless Unit Ventilation Co. Inc.* v. *D'Amore Construction Co.* 283 Mass. 121, 125, 126. *Carleton & Hovey Co.* v. *Burns*, 285 Mass. 479, 486, 487. *McCormick* v. *Proprietors of the Cemetery of Mt. Auburn*, 285 Mass. 548, 552, 553.

The plaintiff bank is entitled to damages. Hornblower and Weeks are bound by the knowledge of their clerk at the stock window that the securities .were put in their custody only on condition that a check for $11,968.83 should be returned for them, and that otherwise delivery was not to be effective. *Stetson Press, Inc.* v. *Bunsen Oil Burner Corp.* 285 Mass. 291, 293. There was no intention to pass title upon credit. When Hornblower and Weeks appropriated the certificates and the shares represented thereby, and repudiated the condition upon which custody had been obtained, they were guilty of conversion. *First National Bank of Cairo* v. *Crocker*, 111 Mass. 163. *New York Central Railroad* v. *Freedman*, 240 Mass. 200, 208. *Laverty* v. *Snethen*, 68 N. Y. 522. The present case is governed by *Parsons* v. *Martin*, 11 Gray, 111, where a broker, entrusted by the plaintiff with shares of stock for sale, used part of them to make delivery upon another transaction, and transferred the rest into his own name for convenience in future selling for the plaintiff. This was held a conversion of the entire stock, although the broker had an equal amount of similar stock which he intended to substitute, and later offered to substitute, for the plaintiff's stock. The court said (page 117), "The misappropriation had already taken place, the wrong had been done, and the right to an adequate remedy had already accrued. The shares which the plaintiff had owned could no longer be identified; and there was no pretence therefore that they could ever be restored to him. He was not bound to

take others in their stead." Accord, *Cartwright & Crickmore, Ltd.* v. *MacInnes,* (1931) Can. S. C. R. 425, 75 Am. L. R. 742. If, as is asserted, there is now a "universal custom and practice to transfer securities into the name of the broker" to facilitate sale and delivery, it cannot extend to a case like this where the brokers had no right to the possession of the stock and were not acting on behalf of the owner. This case is not like one where the brokers had a right to the stock as a pledge. *Anderson* v. *Home National Bank of Brockton,* 290 Mass. 40, 45.

The defendants contend that shares of stock are fungible (*Richardson* v. *Shaw,* 209 U. S. 365, 378, 379), and that as they had enough at all times to restore what had been taken, no wrong was done. The conclusion does not follow. *Fay* v. *Gray,* 124 Mass. 500. Hornblower and Weeks never recognized the right of the plaintiff bank to any stock. Even in the case of property as completely fungible as money, one has no right to appropriate to his own use bills or coin put into his custody for a specific purpose, merely because somewhere among his assets he has an equal sum. *Kent* v. *Bornstein,* 12 Allen, 342. *Royce, Allen & Co.* v. *Oakes,* 20 R. I. 252. *Anderson* v. *Foresman,* Wright (Ohio) 598. *Darling* v. *Younker,* 37 Ohio St. 487, 492. *Ulmer* v. *Ulmer,* 2 Nott & M'Cord (S. C.) 489. *Rumery* v. *Brooks,* 205 App. Div. (N. Y.) 283. See also *Parker State Bank* v. *Pennington,* 9 Fed. Rep. (2d) 966, 969.

Cases where a broker, who has sold shares for a customer and has delivered other similar shares to the purchaser, has been held entitled to retain the shares subsequently received from the customer, have no application. *Stuart* v. *Sargent,* 283 Mass. 536, 538. *In re A. O. Brown & Co.* 189 Fed. Rep. 432, 436. Neither is this a case of an innocent appropriation of the property of another, under a reasonable misapprehension, induced by that other, as to the ownership, as in *Hills* v. *Snell,* 104 Mass. 173. See also *Robinson* v. *Bird,* 158 Mass. 357; *New York Central Railroad* v. *Freedman,* 240 Mass. 200, 208; Am. Law Inst. Restatement: Torts, § 244.

Undoubtedly the plaintiff bank was negligent, but that

does not deprive it of a remedy against a subsequent tort-feasor. The judge was right in finding that the conversion took place at the close of business on October 28, 1929, when the securities were credited to McCarthy's margin account and put in course of transfer into the name of Hornblower and Weeks. He rightly awarded the plaintiff bank as damages the value at that time, $12,058.50, with interest. Changes in value after that time are immaterial. *Lawyers Mortgage Investment Corp. of Boston* v. *Paramount Laundries Inc.* 287 Mass. 357, 361, 362. The final decree in the first case in favor of the plaintiff is

*Affirmed, with costs.*

The second case is a bill in equity, brought by Hornblower and Weeks on June 27, 1931, against the bank and McCarthy, alleging that Hornblower and Weeks have in their possession shares of the kinds and amounts delivered to them by the bank, which shares "are the property of the defendant McCarthy, and were delivered to the plaintiffs by the defendant Somerville National Bank and are held by them as security for the indebtedness of said McCarthy to them." As has been shown, this allegation was untrue; the shares delivered by the bank had been transferred long before, and at the time the bill was filed no shares had been segregated in their place. The bill seeks to determine the title to the shares, and the amount of indebtedness of the defendant McCarthy, and to apply the shares in satisfaction of the indebtedness. McCarthy filed a counterclaim, seeking damages for alleged misconduct with reference to shares of the stock of National Shawmut Bank, not involved in the first case. The final decree established the indebtedness of McCarthy to Hornblower and Weeks, awarded him a less sum upon his counterclaim, ordered him to pay the balance, and dismissed the bill as against the bank with costs. McCarthy waives his appeal. Hornblower and Weeks argue only against the dismissal of the bill as to the bank. What has been said is enough to show that this decree also should be affirmed.

*Ordered accordingly.*